**Thomas E. LADNER, Petitioner–Appellant,**

v.

**J.B. SMITH, Sheriff, Smith County, Texas, et al.,[1] Respondent–Appellees.**

**No. 90–4262.**

United States Court of Appeals, Fifth Circuit.

Sept. 12, 1991.

Rehearing and Rehearing En Banc Denied Oct. 8, 1991.

---

**7.** The purpose for the premium in issue is discussed in note 2 *supra.*

**1.** At the time Ladner filed his habeas corpus petition, the person from whom habeas relief could be granted was J.B. Smith, sheriff of Smith County, Texas, where Ladner's second trial was held. Now that Ladner has been convicted and incarcerated, the proper party respondent is James A. Collins, Director, Texas Department of Criminal Justice, Institutional Division.

John H. Seale, Jasper, Tex., for petitioner-appellant.

Michael J. Sandlin, Jack Skeen, Jr., Tyler, Tex., for J.B. Smith.

Charles Palmer, Rex Hall, Asst. Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for State of Tex.

Before GOLDBERG, JOLLY and WIENER, Circuit Judges.

WIENER, Circuit Judge:

The instant case presents this court its first opportunity to review a double jeopardy claim in the context of successive prosecutions since the United States Supreme Court handed down its new double jeopardy test in *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). Here, Petitioner–Appellant Thomas E. Ladner, formerly Chief of Police of Hemphill, Texas, appeals the denial of his habeas corpus petition by the federal district court. Ladner contends that successive state prosecutions for the same conduct, when examined under *Grady*, placed him twice in jeopardy for the same offense. Finding that Ladner's murder prosecution in Smith County (second prosecution) did not rise to the level of double jeopardy under *Grady*, we affirm the district court's denial of Ladner's petition.

## FACTS AND PROCEDURAL HISTORY

In January of 1988, Ladner was indicted in Sabine County, Texas, under Texas Penal Code § 39.021(a)(1) & (2)—violating the civil rights of a prisoner—for intentionally subjecting Loyal Garner to bodily injury while in police custody in the Sabine County Jail, knowing that his (Ladner's) conduct was unlawful.[2] Specifically, Ladner was accused of (1) beating Garner about the head and body with a slapstick and with his fists, causing Garner to fall and hit his head against a wall or door or both; and (2) denying Garner medical attention. In March of 1988, Ladner was indicted in Smith County, Texas, for Garner's murder.

In July of 1988, Ladner was tried in Sabine County (first prosecution) and was acquitted by a jury that rendered a general verdict of not guilty. In April of 1990, Ladner was tried in Smith County, and was convicted of murdering Garner. The murder charge and the civil rights charges arose from precisely the same incident.

Prior to the second prosecution, Ladner had filed a writ of habeas corpus with the Texas district court in Smith County, claiming that the second prosecution by the same sovereign[3] would subject him to double jeopardy. He argued that the prosecution should be barred by the doctrine of collateral estoppel.[4] The Smith County trial court denied habeas relief, but on appeal the Twelfth Court of Appeals of Texas reversed, holding that the second prosecution would subject Ladner to double jeopardy.[5] The Texas Court of Criminal Appeals granted the state's motion for discretionary review. That court, on review, reversed the decision of the Twelfth Court of Appeals and reinstated the state trial court's denial of habeas relief. *See Ladner v. State,* 780 S.W.2d 247 (Tex.Crim.App.1989) (en banc).

After exhausting his state remedies, Ladner petitioned the federal district court for a writ of habeas corpus, reiterating his double jeopardy claim. The case was heard initially by the magistrate judge who recommended that all relief be denied. Ladner objected to that recommendation but, on subsequent de novo hearing, the district court overruled Ladner's objections, accepted the magistrate judge's recommendation, and denied the writ.[6] Ladner immediately filed a notice of appeal to this court, and the district court granted a certificate of probable cause. Ladner also sought emergency relief from this court pursuant to 28 U.S.C. § 2251, to stay the pending state court proceedings. We refused to grant the requested stay, and Ladner was tried for murder in Smith County. He was convicted by a jury and is now in the custody of the Texas Department of Criminal Justice.

After Ladner's habeas corpus petitions had been denied and after his second trial had ended in his murder conviction, the Supreme Court rendered its decision in *Grady,* announcing a new test for double jeopardy claims arising in the context of

---

2. Billy Ray Horton and James Hyden, Sabine County deputy sheriffs, were indicted and acquitted along with Ladner on the civil rights charges, and, with Ladner, were indicted and convicted of murder in the second prosecution. Horton and Hyden intervened in federal district court in the habeas corpus action, but neither joined in this appeal. We, therefore, address this appeal only as it pertains to Ladner.

3. The State of Texas was the plaintiff in both prosecutions. Sabine County had jurisdiction over the first prosecution because Garner's beating occurred there. Smith County had jurisdiction over the second prosecution because Garner died in a hospital in that county. *See* Tex. Crim.Proc.Code Ann. art. 13.07 (Vernon 1977) (the "hitchhiker statute," which permits prosecution in county where injury is received, death occurred or body found).

4. At the time of the second prosecution Ladner argued that the second trial was barred by double jeopardy under the collateral estoppel rule announced in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Ultimately, both the state courts of Texas and the federal district court disagreed, finding that the second prosecution was not barred by *Ashe.*

5. *Ladner v. State,* 790 S.W.2d 671, 677 (Tex. App.—Tyler 1988).

6. The district judge's thorough opinion, issued prior to the *Grady* decision, held that *Ashe* did not bar the second trial. *See Ladner v. Smith,* 740 F.Supp. 1254 (E.D.Tex.1990).

successive prosecutions. The sole issue before this court is whether, under the new test enunciated in *Grady*, Ladner's trial for murder in Smith County subjected him to double jeopardy.

## DISCUSSION

### A. Operable Facts and Holdings in *Grady*

In *Grady* the intoxicated defendant drove his car across the center line of the highway and collided with an oncoming car. The driver of that car subsequently died as a result of injuries received in the accident, and the passenger was seriously injured. The defendant was issued two misdemeanor traffic tickets, one for driving while intoxicated (DWI) and the other for failing to keep to the right of the median. The traffic court was not aware that a homicide investigation was pending or even that a death had occurred as a result of the accident. Consequently, the defendant was allowed to plead guilty in traffic court to the two misdemeanor tickets and received a minimal sentence.

Two months later, a grand jury indicted the defendant for reckless manslaughter, vehicular manslaughter, criminally negligent homicide, third degree reckless assault, and DWI. In the bill of particulars the prosecution stated its intention to prove that the defendant had been driving while intoxicated, had crossed the center line, and had driven at a speed which was excessive under the circumstances. The Supreme Court held that the Double Jeopardy Clause barred the subsequent prosecution because the state, in its own pleadings, confirmed its intention to establish essential elements of the homicide and assault offenses by proving conduct that constituted offenses for which the defendant had already been convicted—DWI and failing to keep to the right of the center line. *Grady*, 110 S.Ct. at 2094.[7]

### B. Applicability of *Grady* to this Case

■ *Grady* applies to cases in which a defendant is subjected to successive prosecutions for separate offenses arising out of the same occurrence, regardless of whether the defendant was acquitted or convicted in the first prosecution. *See United States v. Calderone*, 917 F.2d 717, 720 (2d Cir.1990). The prosecution argues that *Grady* is distinguishable and should not be applied to the facts in the instant case. We disagree. Ladner was prosecuted successively by the same sovereign under two different statutes for two significantly different offenses—civil rights violation and murder—both of which arose from the same occurrence: the beating of Garner at the jail. That the defendant in *Grady* was convicted in his first prosecution while Ladner was acquitted in his is irrelevant to whether *Grady* applies to Ladner. *See Grady*, 110 S.Ct. at 2091. *Grady* addresses all "successive prosecution" situations.

Finding that *Grady* is applicable, we must now determine how its teachings are to be applied.

### The Two Phases of Grady

### A. Phase I—the *Blockburger* Phase[8]

■ "*Grady* directs courts to follow a two-step analysis in resolving double jeopardy claims arising in the context of successive prosecutions. First, the court must apply the *Blockburger* test and its traditional exceptions to determine whether the offense charged in the subsequent prosecution 'requires proof of a fact which the other does not.'" *Calderone*, 917 F.2d at 720 (quoting *Blockburger v. United States*,

---

7. The Court noted that if the state, in the second prosecution, had left untouched the defendant's conduct of DWI and crossing the center line (for which he had already been prosecuted) and had used only the excessive speed conduct to supply the conduct elements of the homicide and assault charges, there would have been no double jeopardy. *See Grady*, 110 S.Ct. at 2094.

8. *Grady* involves a two-step analysis. In the first step, the defendant's claim is analyzed un-

der *Blockburger* and its exceptions; in the second, the analysis is under the new *Grady* "twist." *See Calderone*, 917 F.2d at 720. We have determined that each "step" of Grady actually requires the court to go through a series of analytical steps. Therefore, to avoid confusion we will refer to the first "step" in the *Grady* analysis as the "*Blockburger* phase," and the second "step" in the *Grady* analysis as the "New *Grady* phase."

284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)); *see also Grady,* 110 S.Ct. at 2090–93. If, in the first phase of the *Grady* analysis, application of *Blockburger* reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, the subsequent prosecution is barred. *Id.* (citing *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)). The second prosecution must also be tested to determine if it is barred under one of the two limited exceptions to *Blockburger* found in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), respectively. *See Grady,* 110 S.Ct. at 2092–93.

In *Harris,* the defendant was prosecuted first for robbery and subsequently for felony murder based on a homicide that occurred during the course of the same robbery. The Supreme Court recognized that the second prosecution would not be barred under *Blockburger* because, on the faces of the relevant statutes, the essential elements of the crimes were different. The Court held, however, that the defendant's second prosecution constituted double jeopardy because the felony murder prosecution would necessarily require the defendant to defend against the robbery charge for which he had already been prosecuted. While in that case the robbery was not truly a lesser included offense of murder, the Court nonetheless categorized it as "a *species* of lesser-included offense." *See Grady,* 110 S.Ct. at 2093 (emphasis added) (quoting *Illinois v. Vitale,* 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980)).

In *Ashe,* the Supreme Court held that the doctrine of collateral estoppel prevents a second prosecution arising from the same incident when that prosecution would require relitigation of factual issues that were necessarily resolved in the defendant's favor in the first prosecution. *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1193–94. Under this doctrine, acquittal in the first prosecution bars subsequent prosecution unless a reviewing court can conclude that a "rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444, 90 S.Ct. at 1194.

Thus, to determine whether Ladner's second prosecution is barred by double jeopardy under the *Blockburger* phase of *Grady,* we first must apply the *Blockburger* test itself. But even if the second prosecution survives *Blockburger,* we still must determine whether Ladner's second prosecution is barred under *Harris* or *Ashe.*

**B. The *Blockburger* Phase Applied to Ladner**

■ Ladner's subsequent prosecution for murder survives the *Blockburger* test. The statutory elements of murder differ from the statutory elements of violating a prisoner's civil rights.[9] Specifically, each offense requires proof of an element that need not be proved in the other: Death need not be proved for a civil rights conviction; neither police custody of the victim nor peace officer status of the defendant need be proved for a murder conviction. Moreover, each offense requires proof of different facts for their respective intent or mens rea elements: For the civil rights violation the prosecution must prove that Ladner acted intentionally or willfully and

---

**9.** Ladner was charged under two statutes for violating a prisoner's civil rights:

(1) Tex.Penal Code Ann. § 39.021(a)(1) whose elements are:

(1) a peace officer employed at a jail, (2) intentionally subjects, (3) a person in custody, (4) to bodily injury, (5) knowing his conduct is unlawful.

(2) Tex. Penal Code Ann. § 39.021(a)(2) whose elements are:

(1) a peace officer employed at a jail, (2) willfully denies or impedes, (3) a person in custody, (4) in the exercise or enjoyment of any right, privilege, or immunity, (5) knowing his conduct is unlawful.

The elements of murder under Texas Penal Code Ann. § 19.02(a)(1) & (2) for which Ladner was charged in the Indictment are:

(1) a person, (2) intentionally or knowingly causes the death of an individual, or (3) intends to cause serious bodily injury and commits an act clearly dangerous to human life *that causes death.*

had actual knowledge (subjective) that his action was unlawful; for the murder charge the prosecution must prove that Ladner acted "intentionally or knowingly," i.e., with specific intent (objective). Therefore, the prosecution's first hurdle, the *Blockburger* test, is cleared.

Ladner's second prosecution also clears the post-*Blockburger* hurdles of *Harris* and *Ashe*. Ladner's second prosecution did not require proof of every element of the civil rights violations; neither is the civil rights violation either a true lesser included offense of a murder charge or a "species" of lesser included offense of murder. Therefore, Ladner's second prosecution is not barred by *Harris*. In the *Blockburger* phase, that leaves only *Ashe* to be considered.

Before *Grady* was decided, Ladner relied on the collateral estoppel rule in *Ashe* to support his double jeopardy claim. We find that reliance misplaced. Ladner argues that the only issue in dispute in the first prosecution on which the jury could have acquitted him was whether he was justified in striking Mr. Garner.[10] In insisting that no rational jury could have acquitted him on the question of whether he knew his actions were unlawful, Ladner attempted to foreclose reconsideration of the issue of justification under *Ashe*, claiming that the jury necessarily decided in his favor on that issue.[11] But we agree with the district court's determination that, as a matter of law, the jury might have acquitted Ladner on an issue other than justification so that the second prosecution was not barred by the collateral estoppel doctrine

of *Ashe*. The district court found, and we agree, that under the jury's general verdict of not guilty, acquittal *could* have resulted from the jury's belief that Ladner did not know his conduct was unlawful. It cannot be said that no rational jury could have reached this conclusion.

Having thus tested Ladner's second prosecution under the three steps required by the *Blockburger* phase of *Grady*, and found that it is not barred, we must proceed to phase II of *Grady*.

#### C. Phase II—The New *Grady* Phase

■ *Grady* instructs the examining court that if the indictment[12] in the second prosecution survives *Blockburger* and its exceptions (the *Blockburger* phase), that prosecution must be tested further to determine if, "to establish an *essential element* of an offense charged in [the second] prosecution, the government will prove *conduct* that constitutes an *offense* for which the defendant has already been *prosecuted.*" *Grady*, 110 S.Ct. at 2087 (emphasis added).

In the short time since the opinion in *Grady* was published, some courts and commentators have referred to the second phase of *Grady* as a "same conduct" test. *See United States v. Gonzalez*, 921 F.2d 1530, 1538 (11th Cir.1991); *United States v. Russo*, 906 F.2d 77, 78 (2d Cir.1990). But when the pure holding of *Grady* is carefully parsed, such a limited interpretation is found to be an oversimplification. *Grady* requires much more than a mere search for congruity of conduct. Moreover, if we were to look solely to the con-

---

**10.** The only defenses for civil rights violations under Tex.Penal Code Ann. §§ 39.021(a)(1) & (2) are that the officer used justifiable force in defense of the institution or his own person, or that the officer did not know that his conduct was unlawful. *See* Tex.Penal Code Ann. §§ 9.53, 39.021(a)(1) & (2) (Vernon 1989 & Supp.1991). Therefore, these are the only two issues upon which the jury could have acquitted because the defendant did not dispute that all other elements of the crimes were present.

**11.** *See supra* note 4 and accompanying text.

**12.** Because double jeopardy ensures that a defendant not be subjected to a subsequent trial for the same offense, we look only to the

charges as set out in the indictment to determine if Ladner was placed in double jeopardy. Although in this instance the transcript of Ladner's second trial is available, it is irrelevant because, under *Grady*, the critical inquiry is what conduct the state proposes to use in the second prosecution to prove the essential elements of the second prosecution offenses, and whether that conduct constitutes an offense for which the defendant was already prosecuted. *See Grady*, 110 S.Ct. at 2093. The conduct actually proven in the second trial has no bearing on the question of double jeopardy.

duct that occurred during the subject incident to determine whether *Grady*'s second phase test is satisfied, we would risk transforming *Grady*'s new test into a "same transaction" test, an interpretation expressly and unequivocally rejected by the Court. *See Grady*, 110 S.Ct. at 2094 n. 15. *But see id.* at 2105 (Scalia, J., dissenting) ("prosecutors ... will be well advised to proceed on the assumption on that the 'same transaction' theory has already been adopted"). Finally, we conclude that *Grady* should not be read to establish either a "same evidence" or "same offense" test. *Id.* at 2093.

Thus, the second phase of the *Grady* analysis requires more than merely comparing the acts alleged in the first prosecution with those alleged in the second to determine whether they overlap. Rather, in the second phase of *Grady* the examining court must take the following four analytical steps in sequence to determine whether double jeopardy bars the second prosecution:

1. Identify each *essential element* of the offense with which the defendant is charged in the second prosecution.

2. Determine what *conduct* of the defendant the state proposes to prove to establish each essential element identified in step one.

3. Examine the conduct determined in step two to see if, in and of itself, such conduct constitutes one or more separate and distinct *offenses* for which a person could be prosecuted.

4. Determine whether, in the first prosecution, the defendant was in fact *prosecuted* for one or more of the separate and distinct offenses found in step 3.

If the examining court gets to the fourth step and finds in the affirmative, the second prosecution would be barred by the Double Jeopardy Clause. But if the court answers either the third or fourth step in the negative, there would be no double jeopardy bar to the second prosecution.

## D. Application of *Grady*'s New Four Step Test to Ladner

At the first step we seek to identify the *essential elements* of the offense (murder) with which Ladner is charged in the second prosecution. In doing so we find that the first essential element of that offense is the degree of criminal intent or mens rea, here acting "intentionally and knowingly." And we find that the second essential element of the offense of murder is the overt act of the defendant, here that he "cause[d] the death of an individual" or, alternatively, "intend[ed] to cause serious bodily injury and commit[ted] an act clearly dangerous to human life that causes death."

At the second step we seek to determine precisely what *conduct* the state proposes to prove in establishing each of the essential elements identified in the first step. The conduct alleged in the indictment for the second prosecution is that Ladner beat Garner about the head with a slapstick, a nightstick and an object unknown, thereby intentionally and knowingly causing his death; or alternatively that Ladner intentionally and knowingly committed an act clearly dangerous to a human life by striking Garner in that manner.

At the third step, we examine the conduct we found in the second step to determine whether such conduct constitutes one or more separate *offenses* for which Ladner could be prosecuted separately. Clearly the conduct that the state proposes to use in proving the essential elements of murder—Ladner's brutal beating of Garner—would constitute any number of separate and distinct homicide offenses (such as murder, voluntary manslaughter, involuntary manslaughter, or criminally negligent homicide) as well as several non-lethal excessive force offenses (such as aggravated assault or assault), for which Ladner could have been prosecuted separately. Thus, the question posed in the third step of the second phase of *Grady* is answered affirmatively.

As the third step was answered affirmatively, we must proceed to the fourth and final step of *Grady*'s second phase. At

this final step we must determine whether Ladner was in fact *prosecuted* in the first (civil rights) trial for any separate and distinct offenses constituted by conduct that the prosecution would have to prove to establish an essential element in the second (murder) trial. Our conclusion is *clearly not.* In the first trial Ladner was *not* prosecuted for any of the various homicide offenses; neither was he prosecuted for assault, aggravated assault, or any other non-lethal excessive force offenses. The essential element at issue in Ladner's prosecution for murder is the physical element that the prosecution stated it would prove by evidence of Ladner's beating of Garner. Although this conduct alone (the beating) may constitute a number of separate and distinct offenses (such as aggravated assault, assault, etc.), none of those distinct offenses are offenses for which Ladner was in fact tried in the first prosecution.

Ladner was tried only for violating Garner's civil rights. Each such offense involved the physical injury element *plus* three additional elements: a prisoner in custody, a peace officer as malefactor, and the subjective knowledge of such peace officer that his action was illegal. The beating alone does *not* constitute the offense of violating a prisoner's civil rights. Moreover, none of the three additional elements, nor the civil rights offense itself, are required to be proved by the prosecution in Ladner's subsequent trial to establish an essential element of murder. Therefore, even though Ladner's conduct (the beating) constitutes any number of offenses (aggravated assault, assault, etc.), and even though that same conduct (the beating) would necessarily be used to establish essential elements in Ladner's murder trial, Ladner was never before prosecuted for any offense based solely on that "conduct." In and of itself, the conduct to be proved to establish an essential element in the second (murder) prosecution does not constitute either of the civil rights violations for which he was previously prosecuted.

We recognize that in the two prosecutions there is an identity of conduct—evidence of Ladner's beating of Garner featured prominently in both prosecutions. But the fact that the same evidence may be presented in both trials is irrelevant. *See Grady,* 110 S.Ct. at 2094 & n. 15. The critical inquiry is whether an essential element of the offense charged in the second prosecution requires proof of conduct that constitutes a separate and distinct offense for which Ladner has already been prosecuted.

In *Grady,* the defendant was prosecuted in his first trial for specific *offenses*—DWI and crossing the center line—established by *conduct* that in the second prosecution the state's bill of particulars stated would be used to prove the *essential elements* of the vehicular homicide and assault offenses. By contrast, Ladner was not *prosecuted* in his first trial for any *offense* wholly established by proof of *conduct* that would be used to establish an *essential element* of an offense charged in his second prosecution. In no way did the beating (an essential element in the murder charge), in and of itself, constitute either offense for which Ladner was tried in the first prosecution.

### E. The Lesson of *Grady*

█ *Grady* teaches that, in the context of successive prosecutions, the Double Jeopardy Clause bars the subsequent prosecution if the government will prove conduct that establishes an essential element of an offense charged in the second prosecution and that conduct, in and of itself, constitutes an offense for which the defendant was tried in the initial prosecution. Again, Ladner was *not* prosecuted in his civil rights trial for any offense constituted solely by conduct the proof of which would have been used to establish an essential element of the murder offense for which he would be tried in the second prosecution.[13]

---

**13.** We are aware that Ladner has already been tried a second time. But, because double jeopardy should be tested prior to a second trial, on basis of the indictment in that prosecution or the bill of particulars or some such similar document, the noted sentence is written in the subjunctive mood. *See supra* note 12.

Further, *Grady* admonishes that it is establishing neither an "actual evidence" or "same evidence" test, nor a "same conduct" or "same transaction" test. Rather, the new second phase test of *Grady* is a complex, skillfully crafted four step test: "The Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish [1] an *essential element* of an offense charged in that prosecution, will prove [2] *conduct* that constitutes [3] an *offense* for which the defendant has already been [4] *prosecuted."* *Grady*, 110 S.Ct. at 2093 (emphasis added). When those four steps are faithfully followed in the instant case, the conclusion is inescapable that Ladner's second prosecution survives not only *Grady*'s first phase tests of *Blockburger* and its exceptions, but the new, second phase four-step test of *Grady* as well. Clearly, Ladner's second prosecution was not barred by the Double Jeopardy Clause.

## CONCLUSION

*Grady* is new and its lesson, even if carefully analyzed and painstakingly administered, is not easy to apply. As demonstrated above, applying *Grady*'s new test to Ladner's circumstances is considerably more arduous than applying it to the more straightforward circumstances of *Grady* itself.[14] A strict reading of *Grady*, however, convinces us that our interpretation is accurate and that the result reached in this case is correct, albeit opposite from the final result of *Grady*. In that case the defendant obviously had been prosecuted in his first trial for offenses constituted by conduct the proof of which the State proposed to use in establishing essential elements of the crimes charged in the second prosecution. In the instant case the reverse is true: Ladner was never prosecuted in Sabine County for an offense constituted by conduct that would be used by the State

in Smith County to prove an essential element of the offense of murder. The sole similarity in the two prosecutions of Ladner is the congruity of conduct (the beating) which the prosecution used as evidence of each offense. Under *Grady* that simply is not enough to produce a double jeopardy bar.

Because we find that Ladner's Smith County prosecution for the murder of Loyal Garner was not barred by the Double Jeopardy Clause, the judgment of the district court denying Ladner's petition for writ of habeas corpus is

AFFIRMED.

E. GRADY JOLLY, Circuit Judge, dissenting:

Because the outcome of the test devised by the majority is impermissibly contingent on the sequence of the successive prosecutions, because application of the test unnecessarily creates conflicts with other circuit courts, because I cannot agree that we should consider only the indictment in determining whether double jeopardy has attached in a case that has already been tried, and, finally, because the majority opinion confuses the analysis under *Grady*, a conduct analysis, with the traditional definition of "same offense" under *Blockburger*, I respectfully dissent from the distinguished majority and its scholarly effort.

### I

The first evident flaw in the majority's test is that whether double jeopardy attaches is contingent on the order in which the cases are tried. What an odd result; not only odd, however, but apparently unconstitutional. The Supreme Court held in *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977), that "whatever the sequence may be, the Fifth

---

14. An even more complex circumstance is presented by situations in which one of the prosecutions at issue is for RICO or complex conspiracy-type offenses. The circuits are split on the applicability of *Grady* to such cases. *See, e.g., United States v. Esposito*, 912 F.2d 60, 64 (3d Cir.1990) (*Grady* does not bar prosecution on substantive drug offenses that supported

predicate acts charged in RICO counts of earlier indictment); *United States v. Russo*, 906 F.2d 77, 78 (2d Cir.1990) (prosecution for which the first prosecution for RICO conspiracy was based, is inconsistent with the conduct test announced in *Grady*). We express no opinion on this subject, as Ladner's appeal does not present any such circumstance.

Amendment forbids successive prosecution and cumulative punishment for a greater and lesser offense." Furthermore, in *Grady*, Justice Brennan cited *Brown* for this proposition. *Grady*, 110 S.Ct. at 2093 n. 11. I have found no court after the *Brown* decision that has read the double jeopardy clause as protecting a defendant's right to be tried in a certain order.

Here, although the majority devises a four-part test claiming to *implement Grady*, if we reverse the order of trials in *Grady* and apply the majority's test, double jeopardy would not in fact attach; to have proved the misdemeanors, the government would not have proved conduct that constituted the entirety of the previously prosecuted offense of vehicular manslaughter. It is clear, however, that the *Grady* court did not intend such a constitutionally unsatisfactory result: "[I]f in the course of securing a conviction for one offense the State necessarily has proved the conduct comprising all of the elements of another offense not yet prosecuted (a 'component offense'), the Double Jeopardy Clause would bar subsequent prosecution of the component offense." *Grady*, 110 S.Ct. at 2093 n. 11.

The majority is silent on this glitch in its analysis.

## II

Second, the majority has devised a test that is in conflict with virtually every decision by other circuit courts that have applied the *Grady* test. Again, however, this conflict arises entirely from the significance that the majority's test places on the order of successive prosecutions.

In *United States v. Gonzalez*, 921 F.2d 1530 (11th Cir.1991), the Eleventh Circuit held that *Grady* did not bar a conviction for conspiring to violate RICO even though the defendant had previously been prosecuted for various drug offenses including possession, importation, and conspiracy. These crimes were used as RICO predicates in the second prosecution. The Eleventh Circuit reasoned that *Grady*, by its facts and the facts of the cases it relied upon, is limited to single-act crimes. It

then determined that the conduct proved in the first prosecution was the defendant's role in each substantive crime; in the second prosecution, the conduct proved was the defendant's agreement. Although the two prosecutions may be part of the same transaction or proved by the same evidence, the Eleventh Circuit concluded that the second prosecution did not constitute double jeopardy under the new analysis presented in *Grady*. *See also United States v. Farmer*, 923 F.2d 1557 (11th Cir. 1991) (no double jeopardy bar to trial of substantive count after prior acquittal of conspiracy count because essence of conspiracy is proof of an agreement which prosecution did not seek to prove to second jury).

The Third Circuit likewise concluded in *United States v. Pungitore*, 910 F.2d 1084, 1111 (3d Cir.1990), that "[h]owever significant *Grady v. Corbin* may prove to be in cases of simple felonies ... it has nothing whatsoever to do with the compound-complex [RICO] crimes at issue here." In *Pungitore*, the defendant had argued that double jeopardy barred his RICO prosecution because he had been previously convicted of extortion, one of the predicate acts involved in the RICO charge. *See also United States v. Esposito*, 912 F.2d 60, 64 (3d Cir.1990) (*Grady* does not bar prosecution on substantive drug offenses that supported predicate acts charged in RICO count of earlier indictment).

An opposite result was reached by the Second Circuit in *United States v. Russo*, 906 F.2d 77, 78 (2d Cir.1990). In that case the government conceded that "prosecution of the obstruction of justice charges [the predicate act upon which the RICO conspiracy charge was based] following acquittal of the RICO conspiracy ... was inconsistent with the 'conduct' test announced in *Grady*." Similarly, in *United States v. Calderone*, 917 F.2d 717, 721 (2d Cir.1990), the Second Circuit held that a second drug conspiracy prosecution was barred by *Grady*'s same-conduct test after an earlier and larger conspiracy prosecution resulted in a judgment of acquittal. In *Calderone*, the court rejected the government's argument

that the conduct in conspiracy cases is the alleged agreement itself, rather than the acts from which the agreement can be inferred. Such a view, according to the Second Circuit, would require courts to examine the offenses charged, as *Blockburger* requires, rather than the conduct that constitutes the offense, as *Grady* demands. The court then concluded that the second conspiracy prosecution was barred by double jeopardy because the conduct relied upon by the government to prove the existence of the conspiracy in the second prosecution was the same as that relied upon in the first, the only difference being that the defendant was charged with a broader, longer, multi-drug conspiracy in the first prosecution.

How the majority's test would affect the outcome of the above decisions depends, of course, on the order of the prosecutions. In the case of a defendant who is first prosecuted for a RICO offense and then prosecuted for the separate crimes constituting the RICO predicate acts, double jeopardy would not be implicated under the majority's test. This is true because, to establish the lesser crimes in the second prosecution, the government would not prove conduct that constituted the RICO offense; although the lesser crimes may have been elements of the prior RICO offense, they were not themselves the subject of a prior prosecution. *Cf. Calderone*, 917 F.2d at 725 (Newman, J., concurring) (proposing that under *Grady* test, conduct must be either entirety of offense previously prosecuted or entirety of any element of prior offense). On the other hand, in the case of a defendant who is tried first for the separate crimes constituting the RICO predicate acts and then tried for the RICO offense, double jeopardy would be implicated under the majority's test, because, to establish an essential element of the RICO violation, the government would prove conduct that constituted the entirety of the previously prosecuted offenses.

Thus, under the majority's test, a previous trial for RICO predicate acts would bar a second trial for RICO conspiracy, although the Eleventh Circuit reached the opposite result in *Gonzalez*. Moreover, the majority's test would not allow a RICO prosecution after a conviction for the predicate acts, although in *Pungitore*, the Third Circuit rejected such a double jeopardy challenge. Furthermore, this view of the majority is not consistent with the Second Circuit's decision in *Russo* that barred a second prosecution on double jeopardy grounds under a similar fact situation, because in *Russo*, the RICO conspiracy was prosecuted first. The majority would not have barred the second prosecution because the RICO predicate acts charged in the second prosecution would not be proved by conduct that constituted the entirety of the prior RICO conspiracy prosecution.

In sum, by adopting the majority's four-part test, the Fifth Circuit appears to stand alone in its interpretation and application of the *Grady* holding.

### III

Third, what I find perhaps the most inexplicable about the majority's treatment of *Grady*'s conduct test is its notion that the transcripts of the two trials are somehow irrelevant to a determination as to whether the state proved the same conduct in each trial. The majority is fully willing to blindfold itself to avoid knowledge of the "actual" facts. It thus declares, in effect, that the trials did not occur and asks only whether this defendant, who has been through the manifest reality of two trials, has theoretically been exposed to double jeopardy. The majority says, "We look only to the charges as set out in the indictment to determine if Ladner was placed in double jeopardy," and "the conduct actually proven in the second trial has no bearing on the question of double jeopardy." Majority Opinion at 361 n. 12.

Declaring undeniable conduct as non-conduct smacks of an Orwellian approach to justice.

The holding of *Grady* is straightforward, especially when, as here, the question of double jeopardy arises after the second prosecution:

> We hold that the Double Jeopardy Clause bars [the] subsequent prosecution if, to

establish an essential element of an offense charged in that prosecution, the government [proved] conduct that constitutes an offense for which the defendant has already been prosecuted.

*Grady*, 110 S.Ct. at 2087.

Here, there has been an actual second prosecution; whether double jeopardy attaches is no abstract matter. The specific issue before us is whether the government did indeed prove conduct in the murder trial that constituted the civil rights offense for which Ladner had already been prosecuted. There is only one sure way to analyze this question: compare the transcripts of the respective trials—not theorize about "what if," when "if" has become a fact.

I challenge the majority to read the transcripts for both trials and then attempt to argue against the proposition that, as a matter of demonstrable fact and palpable reality, in the murder prosecution the state proved the entirety of the conduct for civil rights offense for which Ladner was prosecuted. The transcripts lend themselves to but one conclusion, the state proved the *identical* conduct to prove murder as it did to prove the civil rights offense. The offense of murder in Texas includes the following statutory elements:

1. a person intentionally and knowingly
2. cause[d] the death of an individual or
3. intended to cause serious bodily injury and commit[ted] an act clearly dangerous to human life that causes death.

*See* Tex. Penal Code § 19.02(a)(2). To establish its murder case against Ladner, the state proved the following conduct: Ladner, the chief of police, entered Garner's jail cell and hit Garner three or four times on the head with a slapstick without justification, resulting in Garner's death. The murder trial "conduct" easily supports a verdict of guilty for the crime containing the following elements:

1. a peace officer

2. intentionally subjects
3. a person in custody
4. to bodily injury
5. knowing his conduct is unlawful.

*See* Tex. Penal Code Ann. § 39.021(a)(1). Although in the civil rights trial, the state was, of course, required to prove Ladner's knowledge of the unlawfulness of his conduct, this element was clearly a reasonable inference to be drawn from the conduct described above; indeed, the element of mental state was satisfied in each trial from essentially the same conduct.[1]

Nevertheless, the majority eschews the need to compare the conduct in the respective prosecutions, thus, once again blithely ignoring *Grady*. The *Grady* Court expressly compared the conduct in each of the prosecutions to conclude that the second prosecution was barred:

By its own pleadings, the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses. Therefore the Double Jeopardy Clause bars this successive prosecution....

*Grady*, 110 S.Ct. at 2094.

Here, it is not disputed that the state has proved the entirety of the conduct for which Ladner was prosecuted in the civil rights trial to establish the essential elements of the murder offense.

## IV

Fourth, I respectfully suggest that a crucial error in the analysis of the majority is its confusion of the "same conduct" test of *Grady* with the *Blockburger* analysis of "same offense." The majority certainly is correct to consider *Blockburger* as a "first prong" in its analysis and to point out that the civil rights violation required three additional elements that are not included in the murder offense, i.e., peace officer, cus-

---

1. At the civil rights trial, the state argued that Ladner's knowledge of the unlawfulness of his conduct was also shown through Ladner's testimony about his prior training in the appropriate use of force against prisoners. He did not testify at his murder trial. The violent beating, however, spoke for itself; a reasonable juror could easily have concluded that Ladner possessed knowledge of the unlawfulness of his conduct.

tody, and knowledge. The majority's error, however, is to revert to a discussion of the statutory elements in the second step of its two-step analysis when it has already concluded in the first step that the statutory elements survive the *Blockburger* test of "same offense." Under *Grady*, the *focus* of the double jeopardy analysis is on the *conduct*, proved or to be proved in the respective trials, and not on the statutory elements. Thus, the majority's analysis of the *Grady* holding slips into what is hardly more than another application of *Blockburger*.

## V

With great respect for the hard work of my colleagues, I view *this case* more simply than does the majority. I would devise no complex *Grady* test; I would only decide the case before us. I would hold that here we only need ask whether, based on conduct shown by the state in the second trial, at any point therein, a properly instructed jury could return a verdict for the previously prosecuted offense. Double jeopardy attaches if the inquiry is answered in the affirmative, because at that point it becomes absolutely clear that the government has proved conduct that constitutes the offense of the first prosecution. In short, there was a point in the murder prosecution where the state had unavoidably (or perhaps necessarily) proved that Ladner, a peace officer, physically assaulted and, thus, caused the death of Garner while in custody. A reasonable jury could infer from this conduct, including a violent beating, that Ladner knew he was violating Garner's civil rights.

Undergirding this approach is my belief that it is a mistake, likely to boomerang, to establish any specific test for application in all cases in which the defendant raises a double jeopardy challenge under *Grady*. My view is supported by Justice Scalia's statement in his dissent that "[i]t is not at all apparent how a court is to go about deciding whether the evidence that has been introduced ... at the second trial proves conduct that constitutes an offense for which the defendant has already been

prosecuted." *Grady*, 110 S.Ct. at 2104. Thus, when it is clear, as it is to me here, that the same conduct was used to establish the offense in each prosecution, I would go no further in the analysis.

For the reasons set forth here, I respectfully dissent.

