The STATE of Texas

v.

**Yvette Gearde HOUTH, Appellee.**

**No. 788–91.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 25, 1992.

Rehearing Denied Jan. 27, 1993.

---

**854**

Walter A. Carr, South Houston, Scott Rothenberg, Houston, for appellee.

John B. Holmes, Jr., Dist. Atty. and J. Harvey Hudson, and Mark Font, Asst. Dist. Attys., Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S AND APPEL-LEE'S PETITIONS FOR DISCRE-TIONARY REVIEW

CLINTON, Judge.

Appellee was charged by information with the offense of driving while intoxicated. Prior to trial she filed what was styled a "Motion to Dismiss with Prejudice Under Fifth Amendment and Special Plea Under Article 27.05 of the Texas Code of Criminal Procedure". The trial court treated this as a motion to dismiss and granted it as such. The State then prosecuted this appeal under Article 44.01(a)(4), V.A.C.C.P.[1] The

---

**1.** This Court has held that the courts of appeals do not have jurisdiction to entertain appeals from denial of a special plea brought pursuant to Article 27.05, V.A.C.C.P., such being in the nature of an interlocutory appeal. *Apolinar v. State*, 820 S.W.2d 792 (Tex.Cr.App.1991). It may well be, however, that when a trial court dismisses a prosecution on purported authority of Article 27.05, supra, courts of appeals can entertain a State's appeal under Article 44.-01(a)(1) or (4), supra. At any rate, neither party contests the court of appeals' jurisdiction in this cause, and we do not address it now.

Houston Court of Appeals [1st] reversed the trial court's order and remanded the cause for trial. *State v. Houth*, 810 S.W.2d 852 (Tex.App.—Houston [1st] 1991). In her petition for discretionary review appellee contends the court of appeals' ruling conflicts with the holding of the United States Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). By cross-petition the State contends that, although its ruling was correct, the court of appeals nevertheless misconstrued the holding in *Corbin*. We granted both petitions under Tex.R.App.Pro., Rule 200(c)(3).

## I.

The trial court held a hearing on appellee's motion to dismiss, but no testimony was presented. Therefore we presume the court of appeals gleaned its recitation of facts from an excerpt from the arresting officer's offense report, included in a memorandum supporting appellee's motion to dismiss that was introduced as part of an exhibit and admitted into evidence for purposes of the hearing. That excerpt reads:

"This officer [Easterling] was dispatched to the 7000 Block of Spencer Highway. I arrived on the scene and made contact with Sgt. Holoman, 8804 HCCO, Pct. 8. He related to me that he had stopped a 1984 Silver Chrysler, Texas License Plate 230HCY on Spencer Highway E/B. Sgt. Holoman told me that this vehicle had crossed from lane to lane failed to maintain a single lane. He had stopped the vehicle and found the driver to be very intoxicated. I then walked up to the vehicle where the driver was sitting—a W/F a Mrs. Houth. I had her exit the vehicle and when she did she stumbled out of the vehicle and staggered when she walked to the rear of her vehicle. I then asked her if she would submit to a sobriety test and she attempted the test but allmost [sic] fell down. Myself and Sgt. Holoman had to hold her up to keep from falling down and walking into the traffic. I arrested her for D.W.I. and transported her to the Clear Lake Office. When I offered her the intoxilyzer test she refused the test and refused to do anything on video tape. The defendant was very belligerent and kept trying to do bodily harm to herself by biting herself, scratching her wrist with her nails. She called the booking deputy, Friskie names and cussing at him calling him a Mother Fucker. She also threatened to sue both myself and Deputy Friskie (HCSO). She was booked for FDSML and D.W.I."

Information charging appellee with driving while intoxicated was filed on the day of the offense, May 25, 1990. At the hearing on appellee's motion she introduced what is styled an "Order Pursuant to Plea Bargain Agreement and Plea of Defendant to Misdemeanor of 5-25-90". Signed on June 14, 1990, apparently by a municipal court judge, this order recites that appellee was found guilty of the offense of failing to drive in a single marked lane, committed on May 25, 1990, and had satisfied all sanctions levied against her for that offense. Appellee argued to the trial court that further prosecution for the offense of driving while intoxicated was barred under the Fifth Amendment by her conviction for failing to drive in a single marked lane. She relied upon the holding in *Grady v. Corbin*, supra. After hearing argument about the import of *Corbin*, the trial court agreed that the driving while intoxicated prosecution was jeopardy barred. Judging from his pronouncements for the record, it appears the trial court reasoned that because it would be necessary for the State to prove appellee's conduct of weaving out of her lane, for which she had been prosecuted already, in order to establish probable cause for the arresting officer to stop her on suspicion of D.W.I., further prosecution was barred under *Corbin*—this, despite the State's argument that probable cause is not an element of the offense of driving while intoxicated. See *Neaves v. State*, 767 S.W.2d 784 (Tex.Cr.App.1989).

The First Court of Appeals reversed and remanded the cause for trial. Initially the court of appeals held that failure to maintain a single lane and driving while intoxicated are separate offenses under *Blockburger v. United States*, 284 U.S. 299, 52

S.Ct. 180, 76 L.Ed. 306 (1932). Appellee concedes as much now. Furthermore, the court of appeals reasoned, because the excerpt from the offense report shows there was other evidence besides the failure to maintain a single lane upon which the State could show intoxication, and because the State did not represent to the trial court that "it would rely upon" the failure to maintain a single lane as going to establish the element of intoxication, the court of appeals concluded that the holding in *Corbin* had not been transgressed. *State v. Houth*, supra, at 855. In short, because "the State can prove appellee was intoxicated" without reference to her conduct in failing to stay within a marked lane, there is no jeopardy bar. *Id.*

In her petition for discretionary review appellee argues that the pertinent question under *Corbin* is not what the State "can prove" without reference to her conduct in failing to maintain a single lane of traffic, but rather, whether the State "will prove" such conduct in its effort to establish she was intoxicated in prosecuting her for D.W.I. *Grady v. Corbin*, 495 U.S. at 521, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. Appellee contends that the State as much as conceded in its brief to the court of appeals that it intended to rely upon proof that appellant failed to maintain her lane in order to establish the element of intoxication. The State does acknowledge that appellee's weaving in and out of her lane is circumstantial evidence of intoxication.

However, the State argues that it is not enough to comprise a jeopardy bar under *Corbin* that conduct already prosecuted may also serve as some evidence of an element of the subsequent offense. As we understand the argument, the State construes *Corbin* to require that the conduct already prosecuted "must constitute" an element of the subsequent offense—that it must, in essence, *be* an element of the subsequent offense—before double jeopar-

2. In *Brown* the Supreme Court justified transposition of the *Blockburger* test from the multiple punishment context to the successive prosecution context thus:

   "If two offenses are the same under this test for purposes of barring consecutive sentences

dy applies. Though prevailing in the court of appeals, the State has accordingly filed a cross-petition for discretionary review, claiming that the court of appeals conducted a "same evidence" test, a test that was expressly disclaimed in *Corbin*.

## II.

■ The Double Jeopardy Clause of the Fifth Amendment protects against multiple punishments for the "same offense." *Ex parte Herron*, 790 S.W.2d 623 (Tex.Cr.App. 1990). It also protects against successive prosecutions for the "same offense" following acquittal or conviction. E.g., *May v. State*, 726 S.W.2d 573 (Tex.Cr.App.1987). The constitutional meaning of "same offense" "may vary" depending upon which of these protections is at issue. *Whalen v. United States*, 445 U.S. 684, at 700, 100 S.Ct. 1432, at 1442, 63 L.Ed.2d 715, at 729 (1980) (Rehnquist, J., dissenting). In this cause we are concerned with the meaning of "same offense" in the successive prosecution context.

In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the United States Supreme Court held that the test for discerning legislative intent in deciding whether two offenses are the "same offense" for purposes of multiple punishment would also be applicable to determine "same offense" for purposes of deciding whether successive prosecutions violate the Double Jeopardy Clause. Thus, the Court adopted the rule announced in *Blockburger v. United States*, 284 U.S. 299, at 304, 52 S.Ct. 180, at 182, 76 L.Ed. 306, at 309 (1932), *viz:*

   "... that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." [2]

   at a single trial, they necessarily will be the same for purposes of barring successive prosecutions."
   432 U.S. at 166, 97 S.Ct. at 2226, 53 L.Ed.2d at 194. But the Court itself acknowledged in *Brown* what it would later nail down in *Mis-*

The Court in *Brown* observed that "[t]his test emphasizes the elements of the two offenses." 432 U.S. at 166, 97 S.Ct. at 2226, 53 L.Ed.2d at 194. But the Court took pains to note that in the context of successive prosecution, *Blockburger* did not provide the exclusive test for "same offense." 432 U.S. at 166, n. 6, 97 S.Ct. at 2226, n. 6, 53 L.Ed.2d at 195, n. 6. See *May v. State,* supra.

Accordingly, thirteen days after it handed down its opinion in *Brown,* the Supreme Court decided *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). There, without reference to the *Blockburger* test, the Court held that successive prosecutions, first for robbery with a firearm and later for felony murder predicated upon that robbery, was barred under the Double Jeopardy Clause. The Court opined:

> "When as here, conviction of a greater crime, murder, *cannot be had* without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one." [3]

433 U.S. at 682, 97 S.Ct. at 2913, 53 L.Ed.2d at 1056. In a footnote the Court observed that the State of Oklahoma had conceded that all the ingredients of the robbery offense would have to be proved to establish the felony murder.[4]

---

souri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), *viz:*

> "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."

432 U.S. at 165, 97 S.Ct. at 2225, 53 L.Ed.2d at 194. In context of multiple punishment, then, the *Blockburger* rule operates merely as a rule of statutory construction, a means of divining legislative intent where that intent is not otherwise manifest. *Missouri v. Hunter,* supra. Intimations in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), to the side, however, the Supreme Court has never said that in the successive prosecution context, the role of double jeopardy is limited to ensuring that courts do not exceed the legislative will. Indications are to the contrary. See *Grady v. Corbin,* 495 U.S. at 518–520, 110 S.Ct. at 2091–92, 109 L.Ed.2d at 562–63. Thus, *Blockburger,* which in the context of multiple punishment operates as no more than a rule of statutory construction, appears to operate in the context of successive prosecution as a substantive limitation upon the legislature.

**3.** All emphasis supplied unless otherwise indicated.

**4.** At least since *Brown* the Supreme Court has construed the *Blockburger* test to entail "a technical comparison of the elements of the two [statutory] offenses." *Grady v. Corbin,* supra, 495 U.S. at 520, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. So understood, application of the *Blockburger* test alone would presumably have altered the result in *Harris v. Oklahoma,* supra. For felony murder could be perpetrated in the course of some felony other than robbery with a firearm; and robbery with a firearm need not result in a killing to be actionable. See *Grady v.*

*Corbin,* supra, 495 U.S. at 520, 110 S.Ct. at 2092, 109 L.Ed.2d at 563.

It is curious to note, however, that in at least one context involving felony murder and a predicate felony, the Supreme Court has in fact applied the *Blockburger* test to find a jeopardy bar. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), involved a question of multiple punishment. The Supreme Court was called upon to apply a District of Columbia statute which it construed to codify the *Blockburger* rule to decide whether Whalen could be punished separately for rape and for murder committed in the course of that rape. In applying *Blockburger* the Court rejected the Government's argument that the rape and murder statutes defined different offenses inasmuch as, because the murder could be established by some predicate offense other than rape, each statute therefore contained an element the other did not. The Court observed:

> "Where the offense to be proved does not include proof of a rape—for example, where the offense is a killing in the perpetration of a robbery—the offense is of course different from the offense of rape, and the Government is correct in believing that cumulative punishments for the felony murder and for a rape would be permitted under Blockburger. In the present case, however, proof of a rape is *a necessary element* of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another. offense."

445 U.S. at 694, 100 S.Ct. at 1439, 63 L.Ed.2d at 725. In a footnote the majority denied the dissenter's allegation that it was applying *Blockburger* to the facts alleged in the indictment, rather than the statutory elements alone, explaining that it had "simply concluded that ... Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of a rape." *Id.,* n. 6. It bears asking why the Court did not earlier conclude

Three years later, in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Supreme Court again indicated that a *Blockburger* elements-only analysis for determining "same offense" may prove insufficient to cover the whole range of jeopardy protection. Vitale was charged with failure to reduce speed to avoid an accident after an automobile he had driven struck and killed two children. After he was convicted of this offense the State of Illinois attempted to charge him further with involuntary manslaughter in that he had recklessly caused the deaths of the two children. The Supreme Court of Illinois ruled that the latter prosecution was barred under the Double Jeopardy Clause of the Fifth Amendment. The United States Supreme Court granted certiorari.

In its opinion in *Vitale* the Supreme Court first reiterated the holding of *Brown v. Ohio* that the *Blockburger* test applies and "that [it] focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." 447 U.S. at 416, 100 S.Ct. at 2265, 65 L.Ed.2d at 235. The Court then observed that the offense for which Brown had first been convicted, joyriding, was a statutory lesser included offense of the offense he was later prosecuted for, auto theft. The only difference between the two statutorily prescribed offenses was "that to prove auto theft one need prove in addition to [the elements of] joyriding only the intent permanently to deprive the owner of possession." 447 U.S. at 417, 100 S.Ct. at 2265, 65 L.Ed.2d at 236. The *Vitale* Court continued its exegesis of *Brown:*

> "Holding that the second prosecution was barred, by the Double Jeopardy Clause and the Fourteenth Amendment, we observed that 'the prosecutor who established joyriding need only prove the requisite intent in order to establish auto theft.' [432 U.S.] [161], at 167, 97 S.Ct. 2221[, at 2226,] 53 L.Ed.2d 187. But we also noted that 'the prosecutor who has established auto theft necessarily has established joyriding as well.' *Id.,* at 168, 97 S.Ct. 2221[, at 2227,] 53 L.Ed.2d 187.
>
> "Both observations were essential to the Brown holding. Had the State been able to prove auto theft, without also proving that the defendant took, operated, or kept the auto without the consent of the owner—if proof of the auto theft had not necessarily involved proof of joyriding—the successive prosecutions would not have been for the 'same offense' within the meaning of the Double Jeopardy Clause."

447 U.S. at 417, 100 S.Ct. at 2265–66, 65 L.Ed.2d at 236. Addressing the facts before it in *Vitale,* the Court then observed:

> "... It is clear enough from the opinion below that manslaughter by motor vehicle could be proved against Vitale by showing a death caused by his recklessly failing to slow his vehicle to avoid a collision with the victim. Proving manslaughter in this way would also prove careless failure to slow; nothing more would be needed to prove the latter offense, an offense for which Vitale had already been convicted.
>
> "The State, however, does not concede that its manslaughter charge will or must rest on proof of a reckless failure to slow; it insists that manslaughter by automobile need not involve any element of failure to reduce speed...."

447 U.S. at 418, 100 S.Ct. at 2266, 65 L.Ed.2d at 236–37. The Court went on to agree that:

> "... if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the

---

similarly, applying a *Blockburger* analysis in *Harris v. Oklahoma,* that the Oklahoma Legislature had intended robbery with a firearm to be treated as a lesser included offense of felony murder. In that event the Court might have found a jeopardy bar to successive prosecutions, just as it had in *Brown v. Ohio,* but without resort to, e.g., *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). Be that as it may, the

Court apparently was content to accept the statement of the Oklahoma Court of Criminal Appeals and the concession of the State that proving the underlying robbery with firearms was needed to provide intent necessary for a felony murder conviction, thus making the "common incident" test of *In re Nielsen,* supra, more appropriate than a *Blockburger* inquiry into legislative intent.

'same' under the Blockburger test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution."

*Id.,* 447 U.S. at 419, 100 S.Ct. at 2266–67, 65 L.Ed.2d at 237. But, regardless of whether a careless failure to slow is always a necessary element of manslaughter, so as to bring it within the *Blockburger* test for "same offense," the Court reasoned:

"... it may be that to sustain its manslaughter case *the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure;* it may concede as much prior to trial. In that case, because Vitale has already been convicted *for conduct that is a necessary element of the more serious crime for which he had been charged,* his claim of double jeopardy would be substantial under Brown and our later decision in Harris v. Oklahoma, [supra]."

*Id.,* 447 U.S. at 420, 100 S.Ct. at 2267, 65 L.Ed.2d at 238. The Court then analyzed *Harris* in this way:

"The Oklahoma felony-murder statute on its face did not require proof of a robbery to establish felony murder; other felonies could underlie a felony murder prosecution. [footnote omitted] But for purposes of the Double Jeopardy Clause, we did not consider the crime generally described as felony murder as a separate offense distinct from its various elements. Rather, *we treated a killing in the course of a robbery as itself a separate statutory offense, and the robbery as a species of lesser-included offense.*"

*Id.* Drawing from this "analogy," the Court in *Vitale* concluded:

"[I]f in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident *as the reckless act necessary to prove manslaughter,* Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution."

*Id.,* 447 U.S. at 421, 100 S.Ct. at 2267, 65 L.Ed.2d at 238. Because, *inter alia,* "the reckless act or acts the State will rely on to prove manslaughter [were] still unknown," the Court vacated the judgment of the Supreme Court of Illinois, and remanded the cause for further proceedings.

We have quoted so extensively from *Vitale* in order to lay a groundwork for understanding the holding in *Grady v. Corbin,* supra. The Court in *Vitale* seems to have viewed the element of recklessness in the vehicular manslaughter prosecution at issue there in the same way the Court viewed the underlying felony element in *Harris.* Just as the Court in *Harris* "treated a killing in the course of a robbery as itself a separate statutory offense, [with] robbery as a species of lesser-included offense[,]" 447 U.S. at 420, 100 S.Ct. at 2267, 65 L.Ed.2d at 238, in *Vitale* the Court seems to have considered death caused by a failure to slow down as "itself a separate offense" from death caused in some other reckless manner, with the failure to slow down so as to avoid the accident "as a species of lesser-included offense." And just as the robbery constituted the statutorily necessary "felony" required for prosecution of the felony murder in *Harris,* failure to slow down to avoid an accident constituted the statutorily necessary element of recklessness in *Vitale*—that is, assuming it were to prove on remand that the failure to slow was in fact the conduct that Illinois would rely on to establish recklessness.

It is with this understanding that we approach the holding in *Grady v. Corbin.* Corbin was prosecuted first for driving while intoxicated and failing to keep right of the median in violation of New York law. Subsequently he was indicted for a number of offenses including reckless manslaughter and criminally negligent homicide. The State filed a bill of particulars identifying three reckless or negligent acts by which it proposed to establish the homicide offenses. The first two were the already-prosecuted acts of driving while intoxicated and crossing the median. The third was operating a car at an excessive

rate of speed for the existing weather and road conditions. The Supreme Court observed that the facts presented demonstrated once again that the *Blockburger* test "does not protect defendants sufficiently from the burdens of multiple trials." 495 U.S. at 520, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. Accordingly the Court elevated what it deemed the "suggested" holding of *Vitale* to a rule, *viz:*

> "[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted."

*Id.* The Court immediately elaborated on this rule as follows:

> "This is not an 'actual evidence' or 'same evidence' test. [footnote omitted] The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding. See Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)."

*Id.*, 495 U.S. at 521–522, 110 S.Ct. at 2093, 109 L.Ed.2d at 564–65.

In applying its new rule to the facts of *Corbin,* the Court noted that its task in determining what conduct the State would proved was "simplified by the bill of particulars filed by the State." 495 U.S. at 522, 110 S.Ct. at 2094, 109 L.Ed.2d at 565. The Court construed the bill of particulars to be a representation by the State that it "will prove" both Corbin's driving while intoxicated and his crossing the median to establish the recklessness or negligence necessary to convict. See *In re Corbin v. Hilery,* 74 N.Y.2d 279, at 290, 545 N.Y.S.2d 71, 77, at 543 N.E.2d 714, at 720 (1989).[5] More specifically, the Court deemed application of its analysis "straightforward" in that its "critical inquiry" was resolved by the bill of particulars filed by the State, *viz:*

> "By its own pleadings, the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses. Therefore, the Double Jeopardy Clause bars this successive prosecution[.]"

495 U.S. at 523, 110 S.Ct. at 2094, 109 L.Ed.2d at 565.[6] The Court added however:

**5.** Transposed to the language of *Vitale* and *Harris,* the Court might have said that death caused either by driving while intoxicated or by a failure to stay to the right of the median is "itself a separate statutory offense" from death caused in some other reckless or negligent manner, and that driving while intoxicated and crossing the median are "a species of lesser included offense." Indeed, the Court has since read *Corbin* to have "simply adopted the suggestion we made in dicta in *Vitale.*" *United States v. Felix,* 503 U.S. ——, at ——, 112 S.Ct. 1377, at 1384, 118 L.Ed.2d 25, at 35–36 (1992). In *Corbin* the Court went on to hold that had the State indicated there was other conduct it could have relied on "solely," such as *driving at an excessive speed* for the existing conditions, no jeopardy problem would be presented; again, the Court might have said that driving while intoxicated and failure to keep right of the median are not "a species of lesser-included offense" of the offense of causing death by driving at a speed that is excessive for the existing weather and road conditions. But it did not.

*Corbin* is thus a restatement of *Vitale* with significant modifications. The latter was concerned with *relationships* under Illinois *law* between the crimes of manslaughter and careless failure to reduce speed *et cetera,* that is, whether the latter is *"always* a *necessary* element" of the former. That the *Corbin* Court did not resort to the "species" notion means that whether those matters are "lesser included offenses" is not dispositive under the *Corbin* rule. The inquiry is, "what *conduct* the State will prove" to make out an essential element of the offense; the concern is not whether that conduct is "always a necessary element" under state law, but whether it is criminal conduct that has already been prosecuted. Also important is that acts comprising conduct in *Corbin* are not *per se* requisite elements of offenses to be tried; they are previously prosecuted conduct the prosecution was not required but chose to use as evidence to persuade the factfinder to infer and find those elements beyond a reasonable doubt.

**6.** Of course, we have no provisions for a bill of particulars in this jurisdiction, and the Houston [1st] Court noted in the instant cause that the State did not inform the trial court that it would rely on the failure of appellee to drive in a

"This holding would not bar a subsequent prosecution on the homicide and assault charges if the bill of particulars revealed that the State would *not* rely on proving the conduct for which Corbin had already been convicted (i.e., if the State relied *solely* on Corbin's driving too fast in heavy rain to establish recklessness or negligence."

*Ibid.* In those lights we turn to the instant cause.

## III

■ Appellee contends the State admitted in the court of appeals and here that it will rely on her conduct in failing to stay within a single marked lane, pointing to the following statements:

"At her trial for driving while intoxicated, a police officer *will undoubtedly testify* that he observed the appellee weaving in and out of her lane of traffic. *In fact, this conduct constitutes some evidence of intoxication* ... [but this is not an essential part of driving while intoxicated]."

Appellee's Response to Brief by State, at 5, excerpting State's Appellate Briefs, at 18 and 19, respectively (emphasis supplied and ellipsis of bracketed clause by appellee).

Therefore, he argues from *Corbin,* the Double Jeopardy Clause "must bar the State of Texas from convicting [appellee] for failure to drive in a single lane of traffic, then using that conduct ... to prosecute her for driving while intoxicated." *Id.,* at 5–6.

For its part the State rejoins with emphasis, *viz:*

"Obviously, the appellee's failure to stay in a single lane shares some conduct in common with his driving while intoxicated; in both instances it must be shown, for example, that appellee was driving. * * * * *[A]ppellee will not be guilty of DWI because she was driving and failed to stay in her lane of traffic; nor will the appellee be guilty of DWI because she was intoxicated and failed to stay in her lane of traffic.* While the jury will probably hear some evidence that the appellee failed to stay in a single lane, the jury will be authorized to return a guilty verdict only if it finds that the appellee was driving while intoxicated, and the former simply cannot be categorized as a 'component offense' or 'essential element' of the latter. [note omitted]."

single marked lane to establish a necessary element of driving while intoxicated; it further opined that without such disclosure an appellate court need not anticipate what evidence the State will use. It did, however, resort to the record (as we have) to find witnesses the State could call to prove elements of driving while intoxicated without relying on conduct of failing to maintain a single lane. *State v. Houth,* supra, at 855.

Alerted to similar problems posed by Justice Scalia in dissent, the Supreme Court approved a "procedural mechanism [to] ensure that the test set forth today is in fact 'implementable,'" *viz:*
"'[W]hen a defendant puts double jeopardy in issue with a non-frivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden shifts to the government to establish that there were in fact two separate offenses.' United States v. Ragins, 840 F.2d 1184, 1192 (CA4 1988) (collecting cases)."
*Corbin,* note 14, 495 U.S. at 522, 110 S.Ct. at 2094, 109 L.Ed.2d at 565.
In the instant cause all pertinent events occurred subsequent to the *Corbin* decision; the record reflects the parties were well aware of its

implications. During the hearing on motion to dismiss the State analyzed *Corbin,* related its holdings to the instant cause and submitted that while it "needs" the failure to drive in a marked lane to show probable cause,
"*it is possible to show that the defendant was intoxicated without ever relying upon or showing that one of the indications was that she failed to drive in a single marked lane.* * * * * The Officer could testify in this particular case that he formed the opinion that she was intoxicated *based upon observations outside of her driving facts*[.] * * * * There-fore, it is the State's position that [defendant's] argument fails because the essential *elements of D.W.I. are not essential elements of failure to drive in a single marked lane. They are two distinct and separate offenses[.]*"
S.F. 18–29. That response manifests an understanding of and reveals an attempt to conform to the procedural mechanism contemplated in *Corbin;* it forms the basis of our analysis here. We suggest, however, that a prudent prosecutor would first join issue in writing to a pretrial jeopardy pleading in order to preclude "extraneous evidence" and to protect the record in event of an appeal. See Scalia, J., dissenting, *id.,* 495

State's Appellate Brief, at 19–20. Thus we understand its position is that although failing to stay in a single marked lane is "conduct" it is not an "essential element" of driving while intoxicated; therefore, testimony that appellee failed to stay in her lane is nothing more than "evidence" in the case.

While appealing at first blush, neither argument will withstand closer examination and further analysis.

In the first place, our "critical inquiry" into what conduct the State will prove to establish an essential element of driving while intoxicated has not been simplified by consistent declarations from the State. While in the hearing below the trial prosecutor said it "needs" the prosecuted conduct to show probable cause to stop appellant, n. 6, *ante* at 12, the appellate prosecutor now points out that this court observed in *Neaves v. State*, 767 S.W.2d 784 (Tex.Cr. App.1989), that " 'probable cause' is not an ultimate fact to be proven in a DWI prosecution," and says the State will proffer testimony of conduct of appellee in "weaving in and out of her lane of traffic" as "some evidence of intoxication," Brief, at 19. For purposes of "critical inquiry" we accept that the State "will prove conduct that constitutes an offense which [appellee] has already been prosecuted."

The rest of the inquiry is whether the State "*will prove*" that conduct "*to establish* an essential element*" of driving while intoxicated. According to the declaration of the trial prosecutor, the State will not prove such conduct "to establish" (whatev-

er the term embraces) any matter other than "probable cause," which he asserted is "an evidentiary issue ... not an essential element of an offense." We agree, and could and would end the inquiry by summarily holding that nothing in *Corbin* or other authoritative cases applying the Double Jeopardy Clause bars this prosecution for driving while intoxicated on that account.[7]

But the appellant prosecutor insists that proof of the same conduct is not a jeopardy bar when the State will offer it as merely "some evidence of intoxication." To address that theory we must extend our inquiry.

Facial application of the test announced in *Corbin* would seem to indicate that if the State intends to prove appellee's failure to drive within a single marked lane "to establish" an essential element in prosecuting her for driving while intoxicated, then the latter prosecution is jeopardy barred. For, if the State should rely on appellee's failure to drive within a single marked lane, it will prove conduct constituting an already prosecuted offense as at least a part of its evidence "to establish" an essential element of driving while intoxicated, *viz:* bereft of normal use of mental or physical faculties. Thus the question here seems to turn on the intended meaning of "to establish." See *McIntyre v. Trickey*, 938 F.2d 899, at 905–907 (CA8 1991); see and compare *United States v. Clark*, 928 F.2d 639, at 641, 642 (CA4 1991), with *U.S. v. Calderone*, 917 F.2d 717, at 721 (CA2 1990).[8]

U.S. at 541–542, 110 S.Ct. at 2104, 109 L.Ed.2d at 577–578.

7. We observe, however, that if proving "probable cause" is not jeopardy barred, it might still be ruled out on objection that it is not relevant under Tex.R.Cr.Evid. Rules 401 and 402. *Neaves v. State,* supra.

8. *U.S. v. Clark,* and *U.S. v. Calderone,* both supra, are two of various federal cases in which courts sought to determine the meaning of terms used in the *Corbin* test, and then apply that determination to the particular facts in more complicated crimes involved in the cause being decided. See also, e.g., *Ladner v. Smith,* 941 F.2d 356 (CA5 1991); *United States v. Felix,* 926 F.2d 1522 (CA10 1991); *United States v. Pungitore,* 910 F.2d 1084 (CA3 1990); *United*

*States v. Russo,* 906 F.2d 77 (CA2 1990). Because like *Corbin,* the instant cause presents successive prosecutions of simpler offenses arising out of "*a single course of conduct*" rather than "*multilayered conduct*" in conspiracy prosecutions, and also because often the deciding court itself is divided and as among the several courts the results are uneven, we may look to one or more cases for a common understanding of certain aspects of *Corbin* without regard to their application in those cases. See *United States v. Felix,* 503 U.S. ——, 112 S.Ct. at 1385, 118 L.Ed.2d at 36.

On the point of "to establish," in *Calderone* the lead opinion believes it means "to take the prosecution at its word," so to speak, *viz:* "because the state had indicated in its pleadings that it *would* rely on conduct for which Corbin had

■ We begin with an examination of the bill of particulars stating what "the prosecution will prove" in *Corbin*. After describing the particular conduct in each of three traffic offenses, the prosecution then related that conduct to culpable mental state elements of the offenses to be tried, *viz:*

> "*By so operating his vehicle in the manner above described,* the defendant was aware of and consciously disregarded a substantial and unjustifiable risk of the likelihood of the result which occurred.... By his failure to perceive this risk *while operating a vehicle in a criminally negligent and reckless manner,* he caused physical injury to [named individual] and the death of [another named individual]."

*Id.,* 495 U.S. at 523, 110 S.Ct. at 2094, 109 L.Ed.2d at 565. To be noticed is that the conduct described and the culpable mental states are not identical. The prior conduct, in and of itself, is not congruous with elements alleged in the bill; it would not directly "establish" either culpable mental state, but only provide circumstantial evidence from which the factfinder may draw inferences that might "establish" one or the other. Conduct is an act; evidence is that which furnishes proof of conduct. That is to say, the State will introduce evidence of the prior conduct because it believes that may well achieve the result it desires from the factfinder. In context of this part of the *Corbin* rule—"to establish an essential element of an offense charged ... [the government] will prove conduct that constitutes an offense [already prosecuted]"—we construe "conduct to establish" to mean that previously prosecuted conduct which the State deems relevant to and expects will be probative of an element of the offense charged, here a favorable finding of the requisite culpable mental state; it does not mean that proof of such conduct ultimately "must and will establish" the element.[9]

The State argues, however, that evidence of previously prosecuted conduct which is merely relevant and probative—some evidence—smacks of an "actual evidence" or "same evidence" test. The Court did indeed say that use of "specific evidence" in one trial does not preclude the prosecution

already in fact been prosecuted[,]" and then focuses on that conduct. 917 F.2d, at 721. The concurring opinion reads *Corbin* to bar a second prosecution "if the prosecutor *seeks* to establish an 'element' of the second crime by providing 'conduct that constitutes and offense for which the defendant has already been prosecuted,'" *id.,* at 723, and then focuses on "element" as well as "conduct." *Id.,* at 723–725; along the way Judge Newman opines:

> "What *Grady* holds is that the State *may not use* Corbin's conduct in driving while intoxicated or driving across the center line to establish these required elements of the subsequent offenses.[1] *Grady* does not bar the State from introducing in the second trial *evidence* that Corbin was intoxicated or drove across the center line, but these acts (or that conduct) *cannot be used as elements* of reckless or negligent action underlying the homicide and assault charges."

*Id.,* at 723–724. In note 1 he agrees with Justice Scalia in dissent that *Corbin* bars such previously prosecuted conduct because although not constituting statutorily prescribed elements of the second offenses, "*the State chose to satisfy the statutory elements* of a reckless or negligent act by proving the previously prosecuted conduct of driving while intoxicated and driving across the center line." *Id.,* at 723. Accord: *United States v. Felix,* supra, at 1528–1530.

On the other hand where there was no bill of particulars, only an indictment indicating what the Government would prove as, *inter alia,* an overt act, in *Clark* the question to be decided was "whether evidence of the airport drug possession—'conduct that constitutes an offense for which the defendant has already been prosecuted'—'*establish[ed]* an essential element' of the conspiracy charge." (brackets in original). *Id.,* at 641. Based on the applicable law related to the allegations, the court concluded that "evidence of Clark's airport possession of cocaine and heroin *did not 'establish* an essential element' of the § 846 conspiracy charge." *Id.,* at 642.

9. When the State represented in *Corbin* that it "will prove" and thus rely on driving while intoxicated and crossing the median to demonstrate recklessness and negligence, it limited itself to an understanding that the culpable mental states are susceptible to being established by conduct which violates other statutorily defined offenses. Because accused has already been prosecuted for driving while intoxicated and crossing the median, a second prosecution will violate jeopardy protections. That ultimately he might be acquitted of the homicide and assault offenses does not alter the analysis. The Double Jeopardy Clause protects against successive prosecutions, not just successive convictions.

from introducing that same evidence in a subsequent proceeding. This was no doubt intended to assuage concerns of dissenters that strict application of the *Corbin* test would create a jeopardy bar whenever the State tenders evidence of a previously prosecuted extraneous offense under Tex.R.Cr. Evid., Rule 404(b). *Corbin,* supra (O'Connor, J., dissenting, 495 U.S. at 525–526, 110 S.Ct. at 2095, 109 L.Ed.2d at 567; Scalia, J., dissenting, 495 U.S. at 538–539, 110 S.Ct. at 2102, 109 L.Ed.2d at 575). But the Supreme Court expressly rejected a "same evidence" test under the Double Jeopardy Clause, and its allusion to *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), is to explain that use of "specific evidence" presented at a former trial on an unrelated offense to help establish matters *other than* an element of a charged offense in a subsequent trial is not within the intended scope of the jeopardy bar. See *United States v. Felix,* supra, at 1525–1526, 1528; *United States v. Clark,* supra, 642; cf. *United States v. Calderone,* at 724 (Newman, J., concurring).[10]

■ Accordingly, we construe the *Corbin* test to require that whether evidence of "conduct that constitutes an offense for which the defendant has already been prosecuted" will bar a subsequent prosecution wherein the State represents that it again

"will prove" that conduct, depends on whether the State claims there is other evidence of unprosecuted conduct that it will prove to show "an essential element" of the subsequently charged offense. When the prosecutor will rely alone on such other conduct to demonstrate an essential element of the subsequent offense, the prosecution is not jeopardy barred. *Corbin,* 495 U.S. at 523, 110 S.Ct. at 2094, 109 L.Ed.2d at 565–566; *United States v. Calderone,* supra, (Newman, J., concurring at 723–724 including n. 1). In other words, when *Corbin* says the State will prove previously prosecuted conduct, but also will prove previous conduct in the same transaction that has not been prosecuted, "to establish" an element of a subsequently charged offense, at trial it must rely *solely* on the latter conduct to put beyond reasonable doubt the existence of that element. See *Calderone,* supra, (Newman, J., concurring at 723).

Thus understood, the holding in *Corbin* does not entitle appellee to relief in this cause. The State first said it would need failure of appellee to stay in a single marked lane to prove probable cause; that is "specific evidence" contemplated by *Corbin* in that it does not go to an essential element of the offense to be tried. Now the State concedes, as it must, that the fact

**10.** To be admissible under Rule 404(b) and Tex. R.Cr.Evid., Rules 401 & 402, evidence of "other crimes, wrongs, or acts," whether or not previously adjudicated, must logically serve "to make more or less probable" an elemental fact or an evidentiary fact that inferentially leads to an elemental fact. See *Montgomery v. State,* 810 S.W.2d 372, at 387 (Tex.Cr.App.1990) (Opinion on rehearing on Court's own motion). In this sense every extraneous offense seems to serve "to establish an essential element of an offense charged" in the subsequent prosecution.

Nevertheless, the Supreme Court held in *Dowling* that because in a Rule 404(b) context "specific evidence" need only be sufficient *to* allow the jury to "reasonably conclude"—rather than to find beyond of reasonable doubt—"that the act occurred and that defendant was the actor," even though it might not believe beyond a reasonable doubt that defendant committed the crime charged in the first trial (robbery of an individual), the "collateral-estoppel component of the Double Jeopardy Clause" did not preclude the Government from introducing in a subsequent trial on an unrelated offense (bank robbery) that evidence to enhance its proof of

identification of Dowling and his linkage with another man implicated in the offense. *Id.,* at 348–349, 110 S.Ct. at 672, 107 L.Ed.2d at 717.

The "specific evidence" alluded to in *Corbin* is that which merely "related to prior conduct which the Government failed to prove violated a criminal law." *Dowling,* at 350, 110 S.Ct. at 673, 107 L.Ed.2d at 719. Although related to prior conduct alleged to constitute an offense, "specific evidence" admissible under Rule 404(b) does not *ipso facto* "establish an essential element of an offense charged" in a later prosecution for another offense arising from a completely different transaction. See *Felix,* supra, at 1528 (no same act or conduct at issue in *Dowling,* treating separate crimes from separate conduct); *Clark,* supra, at 642 ("['*Dowling* evidence"] standing alone, did not prove any essential elements of bank robbery"); *Calderone,* supra, at 724 (Newman, J., concurring) (conduct in committing robbery A was introduced *only* as evidence that defendant committed robbery B, not as entirety of an element of robbery B); *United States v. Felix,* supra — U.S. at ——, 112 S.Ct. at 1383, 118 L.Ed.2d at 34.

that appellee weaved out of her marked lane comprises some evidence of driving while intoxicated. Not only has the State not indicated in any manner that it will rely on appellee's failure to drive in a single lane to prove the necessary element of intoxication in this cause, but from the declarations of the trial prosecutor and from the excerpted offense report, the failure to drive in a marked lane is not even the most compelling evidence of intoxication available to the State. So long as the State relies solely on the latter conduct to prove intoxication, evidence that appellee failed to drive in a single lane is not sufficient in and of itself to bar subsequent prosecution for driving while intoxicated.[11]

Accordingly, we affirm the judgment of the court of appeals.

BENAVIDES, Judge, concurring.

I agree that, under *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), prosecution of Appellant for driving while intoxicated was not jeopardy barred on account of her earlier conviction for failing to drive in a single marked lane, even though both cases arose from the same incident and proof of the latter was relevant to establish the former. I do not, however, join the majority in "constru[ing] the *Corbin* test to require that whether evidence of conduct that constitutes an offense for which the defendant has already been prosecuted will bar a subsequent prosecution wherein the State represents that it again will prove that conduct, depends on whether the State claims there is other evidence of unprosecuted conduct that it will prove to show an essential element of the subsequently charged offense." Slip Op. at 18 (internal quotation marks omitted). Accordingly, I concur in the judgment only.

I.

*Corbin* is difficult because it addresses a particularly difficult issue. Other jeopardy problems not involving substantial disputes about sameness, such as reprosecution after the declaration of a mistrial or the reversal of a conviction on appeal, are often theoretically unremarkable. But there are formidable obstacles to the development of a general sameness theory which is consistently capable of generating acceptable results in practice. It is helpful, therefore, to begin with some of the relevant fundamentals predating *Corbin*.

Among other things, the Double Jeopardy Clause serves in large part to ensure that crimes be defined and punishments prescribed by the legislative branch without interference from the judiciary. *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981); *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980). To this end it prohibits courts from entertaining successive prosecutions for what the legislature has defined as a single offense, or for imposing more punishment than the legislature has prescribed for that offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).[1]

Because legislative intent is often unclear, the United States Supreme Court, in

---

**11.** Unlike elements in other offenses at issue in *Corbin, Vitale, Harris, et cetera*, the element of being "intoxicated" while driving or operating a motor vehicle in a public place is not readily establishable by proof of conduct that constitutes an offense for which the accused has already been prosecuted. For example, the offense of public intoxication is statutorily at least declared *not* to be a lesser included offense of driving while intoxicated. V.T.C.A. Penal Code, § 42.08(g). While conduct constituting one or another traffic offense may well be symptomatic of intoxication, none quickly comes to mind that the prosecution "will prove to establish" the essential element of actually being intoxicated. Thus under our analysis of the facts of this

cause application of the *Corbin* test here is in a real sense *sui generis*.

**1.** The Double Jeopardy protection against successive prosecution is waivable. *Jeffers v. United States*, 432 U.S. 137, 154, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977). Arguably, however, the protection against multiple punishments is not. Consequently, it is possible for a situation to arise in which the Constitution will not be offended by a second prosecution even though it necessarily will be offended if the accused receives any additional punishment as a result of that prosecution. *Id.* at 157, 97 S.Ct. at 2219.

order to effectuate constitutional jeopardy prohibitions, indulges a number of presumptions about the purpose of legislation. For example, it presumes, absent proof of a contrary purpose, that legislatures always intend two statutes to proscribe but a single offense whenever the elements of one are analytically contained in the other. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980).[2] Of course, where it is known that a legislative body actually intended to proscribe more than one offense and to impose a separate punishment for each, the Double Jeopardy Clause usually, although not always, presents no bar to a full implementation of that purpose. *See Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

In Texas, it is the public policy that, when two penal statutes stand in such relationship that one defines a lesser included offense of the other under article 37.09 of the Code of Criminal Procedure, an accused whose conduct simultaneously violates both statutes be convicted of and punished for but one offense. *See* Art. 37.08, V.A.C.C.P. In virtually all other cases, it is the policy of this State that offenders be liable to separate conviction and punishment under as many statutes as their conduct violates, either simultaneously or successively.

Moreover, our state law provides for prosecution "in a single criminal action for all offenses arising out of the same criminal episode[,]" V.T.C.A., Penal Code, § 3.02(a), but does not absolutely require such consolidation or entitle an accused to insist that all offenses arising from a single "criminal episode" be adjudicated in one proceeding. It is, therefore, also the policy of Texas to allow successive prosecution for the violation of different, nonincluded statutory offenses, whether or not those violations were committed by a single act, by a continuous series of acts, or by clearly distinct acts. The question raised by *Corbin* is whether this policy offends the Double Jeopardy Clause when the same evidence is offered in different proceedings to prove elements of more than one such offense.

## II.

*Corbin* is the Supreme Court's latest contribution to the persistently troubling question whether sameness should be divined for jeopardy purposes by analyzing the elements of penal statutes or by evaluating the probative effect of inculpatory evidence. Plausible intuitions inform both sides of the debate, making it the more likely that neither side is altogether wrong.[3]

**2.** It is also presumed that statutes susceptible of continuous, uninterrupted violation over time were meant to be prosecuted as a single offense, *Brown v. Ohio*, 432 U.S. 161, 169 n. 8, 97 S.Ct. 2221, 2227 n. 8, 53 L.Ed.2d 187 (1977) (joyriding); *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), and that every discrete instance of culpable conduct proscribed by statute is likewise only a single offense, even if there were multiple victims, items of property, or instrumentalities involved. *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). Each of these presumptions may, of course, be overcome by evidence of a contrary legislative intent. The United States Supreme Court sometimes describes them as rules of lenity. In Texas, however, we do not invariably apply such rules to the interpretation of our own statutes. *See Ex parte Rathmell*, 717 S.W.2d 33, 35–36 (Tex.Crim.App.1986).

**3.** The problem is exacerbated somewhat by a recurring suggestion in Supreme Court opinions, never quite made explicit, that the phrase "same offence" should be understood differently when a jeopardy challenge is to successive prosecutions than when it is to multiple punishments. The notion is, of course, a little perverse, as there is nothing in the Double Jeopardy Clause to give warning of it. No doubt it is inspired by a common intuition that legislatures may punish as often and as severely as they please, but may not pester criminals unnecessarily by forcing them to defend against several related charges in separate proceedings. *See Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Not surprisingly, the main barrier to an effective elaboration of this intuition has been the lack of a means to determine when offenses are closely enough related for mandatory joinder under the Double Jeopardy Clause. Justice Brennan's view that joinder should be required whenever separately punishable offenses arise in the same transaction has been clearly rejected by a majority of the Court. And without some such measure, the argument for a different understanding of "same offence" in context of successive

Invariably, *Blockburger* begins the inquiry. There, the Supreme Court held that two penal statutes presumably define different offenses when "each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. This formula has encouraged the belief that an abstract comparison of elements is sufficient to determine whether two statutes forbid the same conduct. And, because all on the Supreme Court evidently accept that the *Blockburger* formula operates independently of evidentiary facts in individual cases, the essential question has become whether the Double Jeopardy Clause ever requires any further analysis. Increasingly, the answer seems to be that it does.

At least since *Vitale* there has been growing recognition that a criminal offense is more than the sum of statutory elements proscribing it. Much of the recent impetus for this idea comes from a cryptic footnote in *Brown*, wherein the Supreme Court observed gratuitously that:

> [t]he Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.

432 U.S. at 166, n. 6, 97 S.Ct. at 2225, n. 6. What sort of factual issues these might be was not well elaborated by the Court, and the two examples it cited are not especially helpful. One involves application of a collateral estoppel rule, which bars relitigation in a second prosecution of factual issues previously resolved in favor of the accused, whether or not the two offenses are other-

wise the same for jeopardy purposes. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The other is an unclassifiable, early example of continuing offenses, which derives much of its rationale from the now dated social judgment that cohabitation is a functional equivalent of adultery. *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). Whatever the special significance of these cases may be in the long run, it is by no means clear that either of them really represents an extension of *Brown*'s general rule that "the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." 432 U.S. at 169, 97 S.Ct. at 2227. The more critical issue, to which *Brown* makes very little meaningful contribution, is how to tell when one is really a lesser included offense of the other.

That, of course, is why *Vitale* generated so much interest in the first place. Once convicted of "carelessly" failing to reduce speed, Vitale was later charged with involuntary manslaughter, causing death by "recklessly driving a motor vehicle." Although both prosecutions arose from substantially the same or contemporaneous conduct, it was not clear from the manslaughter indictment that Vitale's failure to reduce speed would actually constitute the operative act of recklessness in his homicide prosecution. Accordingly, the Supreme Court remanded the case to Illinois for reconsideration, suggesting that the manslaughter prosecution would be jeopardy barred if the state "relie[d] on and prove[d] a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter." *Vitale*, 447 U.S. at 421, 100 S.Ct. at 2267.

In *Corbin*, a case remarkably similar to *Vitale* on its facts, this suggestion was

prosecutions is left without a rationale. Thus, in *Corbin*, the Court allows as how the Double Jeopardy Clause would not bar a subsequent prosecution based on conduct contemporaneous with and indivisible from that for which an accused had already been prosecuted, even though it would subject him to the same "embarrassment, expense and ordeal" as a subsequent prosecution for conduct identical to that for which he had already been prosecuted, and under circumstances just as intuitively compelling. 495 U.S. at 522, 110 S.Ct. at 2094. Consequently, in spite of halting intimations to the contrary, it seems reasonably certain the Court will ultimately concede that "same offense" at least means the same thing for all purposes under the Double Jeopardy Clause.

made law. Constitutional jurisprudence now seems to hold that the Double Jeopardy Clause bars any successive prosecution where the government must necessarily prove conduct constituting a criminal offense for which the defendant has already been prosecuted in order to establish one or more essential elements of the charged offense, whether or not either such offense is analytically included in the other. *See Ex parte Ramos*, 806 S.W.2d 845, 847 (Tex. Crim.App.1991). As a result, it is fast becoming the popular wisdom that certain penal statutes might actually proscribe the same offense for jeopardy purposes even when neither is a lesser included offense of the other.

Of course, the *Corbin* phenomenon might instead be understood to expand the restrictively abstract notions of includedness given by *Blockburger* were it not that the Supreme Court has a tendency to think of one offense as included in another only when it has the same or fewer than all the same statutory elements. *Cf. Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). If a simple analysis of the elements fails to reveal the kind of relationship thought to be required by *Blockburger*, therefore, the Court is reluctant to find that one prosecution charges a lesser included or greater inclusive offense of the other. Yet the Court is equally unwilling altogether to exempt the factual context of each offense from the reach of constitutional jeopardy prohibitions. Accordingly, I understand the chief significance of *Corbin* to be that elemental includedness no longer limits the circumstances under which distinct penal statutes will be held to proscribe the same criminal conduct within the meaning of the Double Jeopardy Clause.

### III.

The State contends that *Corbin* does not create a same evidence test, as the Court of Appeals evidently believed, but instead focusses on conduct of the accused amounting to violation of a penal statute. Certainly, this view is more consistent with the holding in *Corbin* than is appellants' argument that production of evidence in one criminal trial effectively bars its production in another. *See Corbin*, 495 U.S. at 520, 110 S.Ct. at 2093. But the question is largely academic in Texas. Our own statutory definition of an analytically included offense uses language nearly identical to that adopted by the Supreme Court in *Blockburger*.[4] Local implementation of that formula, however, is somewhat different than the Supreme Court's application of the *Blockburger* test. Indeed, the analysis suggested in *Vitale* and sanctioned in *Corbin* is generally consistent with this Court's method for ascertaining the relationship between most lesser-included offenses and the offenses which include them, even though the Supreme Court evidently regards that analysis to be beyond the scope of *Blockburger*. *See Day v. State*, 532 S.W.2d 302, 304–306 (Tex.Crim. App.1975) (opinion on original submission). *See also Ex parte Peterson*, 738 S.W.2d 688 (Tex.Crim.App.1987); *May v. State*, 726 S.W.2d 573 (Tex.Crim.App.1987).

In Texas, elemental statutory comparison only begins the analysis. Often, some rather specific factual information about each alleged instance of criminal misconduct is necessary to complete it. *See, e.g., Goodin v. State*, 750 S.W.2d 789 (Tex.Crim. App.1988); *Cunningham v. State*, 726 S.W.2d 151 (Tex.Crim.App.1987); *Broussard v. State*, 642 S.W.2d 171, 173 (Tex. Crim.App.1982). For example, an examination of statutory elements yields the conclusion that murder is the same offense as murder, because their elements are identical. Consequently, murder is also a lesser included offense of itself, since all offenses

---

**4.** *Blockburger* provides that:
   ... where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.
   Texas Code of Criminal Procedure article 37.-09(1) provides that:
   An offense is a lesser included offense if ... it is established by proof of the same or less than all facts required to establish the commission of the offense charged[.]

are lesser included offenses of themselves by definition. Yet, no one has ever thought that Texas policy or the Double Jeopardy Clause bars successive prosecution and multiple punishment for the murder of one person today and another tomorrow.[5] In such case, it is plainly not enough to know the statutory elements of murder. Both the lesser-included-offense analysis and, by implication, the jeopardy analysis cannot be completed without also knowing at least the identities of the victims. This information is fact-specific and variable from one instance of murder to another. Accordingly, I do not consider the murder of one person to be a lesser included offense of the murder of another, nor do I consider successive prosecution or multiple punishment for these offenses to be jeopardy barred, even though both have the same statutory elements.

Conversely, statutory offenses which seem different in the abstract may prove to be the same in light of the factual context in which they arise. For example, the crimes of Theft and Unauthorized Use of a Motor Vehicle are different inasmuch as the former requires an appropriation of some property, not necessarily a vehicle, while the latter specifically requires operation of a motor vehicle. If, however, in a particular case the property actually stolen was shown to be a motor vehicle and the manner of its appropriation actually included driving it, it is apparent that the specific instance of Unauthorized Use actually proven is indeed a lesser included offense of the Theft offense charged. *Neely v.*

*State,* 571 S.W.2d 926 (Tex.Crim.App.1978). Accordingly, in this instance also, questions of includedness and, presumably, of jeopardy as well cannot be resolved without knowing a description of the property involved and the specific means by which it was taken. *Ex parte Jefferson,* 681 S.W.2d 33 (Tex.Crim.App.1984). *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). As in the last example, both matters are fact-specific and variable from one instance of Theft or Joy-Riding to the next.

Of course, I do not regard one offense as included within another merely because the same evidentiary facts might be proven in the prosecution of both offenses. It is widely accepted, for example, that the State may prove an unadjudicated extraneous offense to establish an element of the charged offense. *Montgomery v. State,* 810 S.W.2d 372, 387–388 (Tex.Crim.App. 1990) (opinion on rehearing). No one thinks that this practice somehow transforms the extraneous offense into a lesser included offense of the charged offense, or that it prevents a subsequent prosecution for the extraneous offense.[6] If the State chooses, therefore, to prove in a Capital Murder prosecution that the killing of a policeman was done intentionally to avoid apprehension for escape from a penal institution, it is not likely that an instruction on Escape as a lesser included offense of Murder would be submitted for jury consideration, nor that a successive prosecution for the Escape itself would be regarded by anyone as jeopardy barred.[7]

5. For this reason alone, the Supreme Court must have misspoken in *Corbin,* 495 U.S. at 515, 110 S.Ct. at 2090, when it said:

> To determine whether a prosecution is barred by the Double Jeopardy Clause, a court must first apply the traditional *Blockburger* test. If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred.

6. In spite of its collateral estoppel issue, this was essentially the case presented in *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). *See Corbin,* 495 U.S. at 524–526, 110 S.Ct. at 2095–2096 (O'Connor, J., dissenting); 495 U.S. at 537, 110 S.Ct. at 2102 (Scalia, J., dissenting).

7. Surely, therefore, the Supreme Court did not really mean to be taken literally in *Corbin,* 495 U.S. at 520, 110 S.Ct. at 2093, when it said that:

> ... the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in the prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

It is upon this point that the justices sense some difference between *Corbin* and *Dowling,* but can't quite agree on what it is. Ultimately, the simplest, and perhaps most satisfactory, account may come from an understanding that every penal violation upon which proof is admissible at trial must either be the charged offense, an included offense, or an extraneous offense. Proof of an extraneous offense never has jeopar-

From these examples alone it is clear that includedness under Texas statutory and decisional law, as well as sameness for purposes of jeopardy prohibitions in Texas, cannot depend only on an analysis of statutory abstractions defining a whole class of potential offenses, nor only on a factual description of the conduct and circumstances comprising a discrete instance of criminal behavior.[8] Some synthetic approach is clearly necessary to distinguish each criminal offense from every other, as it is not possible to implement statutory or constitutional prohibitions unless an offense is regarded as something unique for purposes both of article 37.08 and of the Double Jeopardy Clause.[9] One simply cannot tell whether two prosecutions are for the same offense or for greater and lesser included offenses without knowing whether the penal statutes allegedly violated are different as a matter of law and whether each purported violation of the same statute is different from every other as a matter of fact.[10] This is the minimum information necessary to specify a discrete instance of criminal misconduct, undoubtedly what both article 37.08 and the Double Jeopardy Clause mean by offense.

It follows that the word for offense, as it appears both in the Double Jeopardy Clause and in Texas statutes defining allowable increments of prosecution, cannot mean "penal statute." Rather, it must necessarily mean "conduct which violates a penal statute." What the Double Jeopardy Clause prohibits, at least in Texas, is not successive prosecutions or multiple punishments for repeated discrete violations of the same penal statute. Rather it prohibits successive prosecutions or multiple punish-

dy implications, while proof of an included offense always does. Thus, because extraneous offenses are never included offenses, and included offenses are never extraneous offenses, jeopardy problems of the kind given by *Corbin, Vitale, Brown,* and *Blockburger* can always be solved by identifying the category into which questioned conduct falls.

8. The inclination of Justice Scalia, and of those who join his dissent in *Corbin,* to understand the word "offence" in the Double Jeopardy Clause as referring just to statutory abstractions is, therefore, surely a mistake. By such reckoning, those once convicted or acquitted of murder can thereafter kill others with impunity their whole lives, since the only things distinguishing different instances of murder by the same criminal actor are the nonstatutory circumstances of different victims, different times, and different manners of execution. The statutory elements of murder remain identical from one case to the next.

Of course, the dissenters in *Corbin* might intend the word "offence" to mean "statute" only in context of a complaint about successive prosecutions under different statutes, not successive prosecutions under the same statute. They might, in fact, be willing to resolve the latter complaint, should it ever arise, by understanding the word "offence" to mean "conduct" rather than "statute." But it would produce a grotesquely inelegant construction of the Double Jeopardy Clause, and one which is intellectually at odds with the *Corbin* dissent anyway. More likely, Justice Scalia and his colleagues are just mistaken about this.

9. Interestingly, on the same day in 1977, the Supreme Court described the *Blockburger* rule both as a "same evidence" test in *Jeffers v.*

*United States,* 432 U.S. 137, 147, 97 S.Ct. 2207, 2214, 53 L.Ed.2d 168 (1977), and as "emphasiz[ing] the elements of the two crimes" in *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Given the Court's evidently unanimous aversion to calling it a "same evidence" test in *Corbin,* and considering the great difficulty of the problem, some uniformity of terminology, at least, would be helpful.

10. The first part of this specification focusses on the relationship between statutes. It assumes that legislatures occasionally, although not ordinarily, enact different statutes to proscribe the same offense. *See Whalen,* 445 U.S. at 692, 100 S.Ct. at 1438. For example, some offenses exist in both regular and aggravated versions. Typically, the aggravated version includes one or more elements not found in the regular version, but is otherwise identical to it in all respects. Also typical of this relationship is a greater potential penalty for the aggravated offense. In such cases, it is clear that the legislature might have accomplished much the same purpose by instead defining only a single offense and making the penalty for it vary with the presence or absence of additional, aggravating factors. Indeed, the legislature often does choose this alternative method of aggravating the punishment for an offense. And insofar as both methods effectively accomplish the imposition of greater punishment under exactly the circumstances intended, there is no particular reason for preferring one to the other. Nevertheless, there are grounds for taking some care in this regard when drafting legislation. For instance, it is apparent that jeopardy problems are best avoided by proscribing each intended offense with only one statute.

ments for conduct which necessarily violates a penal statute only once or, presumably, for conduct which necessarily violates more than one penal statute at a time. In both instances the principle difficulty of application is to discover the intent of those who enacted the statutes.

Because legislators are free to provide whether simultaneous violation of several statutes shall be regarded as one offense or several offenses, even though they may not be free to define the criteria according to which it is determined whether multiple violations constitute the same offense, the only real task of the courts under the Double Jeopardy Clause, as under the State's general statutory scheme for defining offenses and prescribing punishment, is to ensure that these objectives are implemented in accordance with discernable legislative intent.[11] In Texas, our law provides that two different statutes applied to the facts of a particular case proscribe the same offense only if it would be impossible for a factfinder rationally to acquit under any one statute having found true both the conduct necessary to constitute a violation of the other and any shared nonconduct elements.[12]

## IV.

By this reckoning, the successive prosecution of Appellant for driving while intoxicated and failing to drive in a single marked lane does not amount to a double prosecution for the same offense. Clearly,

Appellant might rationally be convicted of the weaving offense even by a jury that harbors reasonable doubts about whether she was intoxicated. Likewise, she might be convicted of DWI by jurors who nevertheless have doubts about whether she drove outside a single marked lane of traffic. It is never the case under Texas law that conduct violating one of these penal statutes automatically violates the other, and it was not the case here. Accordingly, it is of no consequence to me that, in the impending prosecution for DWI, Appellant's weaving might actually be taken by the jury to indicate that she was intoxicated. If the State offers to prove her weaving behavior as circumstantial evidence of intoxication, the evidence may be received over objection only if it meets the test of relevancy prescribed by our Rules of Evidence for extraneous offenses. It may not be proved upon the ground that it shows a lesser included offense of the alleged DWI.

The notion that *Corbin* forbids prosecution whenever extraneous offenses are offered as circumstantial evidence of the charged offense or of one of its essential elements seems clearly wrong to me. Moreover, such a reading, although plausible on the surface of *Corbin* itself, has recently been repudiated by the Supreme Court in *United States v. Felix*, —— U.S. ——, at ——, 112 S.Ct. 1377, at 1382, 118 L.Ed.2d 25 (1992). Yet, the majority opinion in this case has articulated a rule which would effectively bar successive prosecu-

---

**11.** Although not entirely without doubt, I believe that the circumstances surrounding *Corbin* are consistent with this proposition even though the State of New York expressly provided by statute that conviction for a traffic violation "shall not be a bar to a prosecution for an assault or for a homicide committed by any person in operating a motor vehicle." Veh. & Traf. § 1800(d). *See Corbin v. Hillery*, 74 N.Y.2d 279, 545 N.Y.S.2d 71, 543 N.E.2d 714 (1989). I suspect that this clear expression of legislative intent, not discussed by the Supreme Court in *Corbin*, was nevertheless ineffective to avoid jeopardy prohibitions because it did not even purport to define traffic violations in such a way as to make them different from the offenses of assault and homicide under New York law. Rather, it attempted to authorize successive prosecution for that which it conceded by implication to be the same or a lesser included

offense. *Cf. Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

**12.** What is meant by "conduct" under Texas law is "an act or omission and its accompanying mental state." V.T.C.A., Penal Code, § 1.07(a)(8). Nonconduct elements include circumstances surrounding conduct and results of conduct. *See* V.T.C.A., Penal Code, §§ 6.03, 6.04. Clearly, under Texas law, the legislature may provide that two different offenses have been committed, even when the same criminal conduct is relied upon to prove both, by requiring in each case that there also be proof of a different result or of a different circumstance surrounding the criminal conduct. *See Ladner v. Smith*, 941 F.2d 356 (5th Cir.1991).

tion of an extraneous offense offered merely as circumstantial support for an allegation of wholly different misconduct. I cannot accept that such a reading is a fair interpretation of *Corbin* or of the Double Jeopardy Clause.

In the instant cause, Appellant's prosecution for failing to drive in a single marked lane was not for a lesser included offense of driving while intoxicated, and did not constitute proof of conduct comprising one or more elements of driving while intoxicated. Even if the State intended to prove Appellant's failure to drive in a single marked lane as circumstantial proof of intoxication in a subsequent prosecution for driving while intoxicated, I would not hold it to be jeopardy barred under *Corbin*. Consequently, I concur in the judgment only.

McCORMICK, P.J., and CAMPBELL and WHITE, JJ., join.