Justice Souter,
with whom
Justice Stevens joins, concurring in the judgment in part and dissenting in part.
While I agree with the Court as far as it goes in holding that a citation for criminal contempt and an indictment for violating a substantive criminal statute may amount to charges of the “same offence” for purposes of the Double Jeopardy Clause, U. S. Const., Arndt. 5, I cannot join the Court in restricting the Clause’s reach and dismembering the protection against successive prosecution that the Constitu *746 tion was meant to provide. The Court has read our precedents so narrowly as to leave them bereft of the principles animating that protection, and has chosen to overrule the most recent of the relevant cases, Grady v. Corbin, 495 U. S. 508 (1990), decided three years ago. Because I think that Grady was correctly decided, amounting merely to an expression of just those animating principles, and because, even if the decision had been wrong in the first instance, there is no warrant for overruling it now, I respectfully dissent. I join Part I of Justice White’s opinion, and I would hold, as he would, both the prosecution of Dixon and the prosecution of Foster under all the counts of the indictment against him to be barred by the Double Jeopardy Clause.[1]
I
In providing that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb,” U. S. Const., Arndt. 5, the Double Jeopardy Clause protects against two distinct types of abuses. See North Carolina v. Pearce, 395 U. S. 711, 717 (1969). It protects against being punished more than once for a single offense, or “multiple punishment.” Where a person is being subjected to more than one sentence, the Double Jeopardy Clause ensures that he is not receiving for one offense more than the punishment authorized. The Clause also protects against being prosecuted for the same offense more than once, or “successive prosecution.” “It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction.” Ibid, (footnotes omitted). The Clause functions in different ways in the two contexts, and the analysis applied to claims of successive prosecution differs from that employed to analyze claims of multiple punishment.
*747 II
In addressing multiple punishments, “the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.” Brown v. Ohio, 432 U. S. 161, 165 (1977). Courts enforcing the federal guarantee against multiple punishment therefore must examine the various offenses for which a person is being punished to determine whether, as defined by the legislature, any two or more of them are the same offense. Over 60 years ago, this Court stated the test still used today to determine “whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment,” id., at 166:
“[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” Blockburger v. United States, 284 U. S. 299, 304 (1932).
The Blockburger test “emphasizes the elements of the two crimes.” Brown, supra, at 166. Indeed, the determination whether two statutes describe the “same offence” for multiple punishment purposes has been held to involve only a question of statutory construction. We ask what the elements of each offense are as a matter of statutory interpretation, to determine whether the legislature intended “to impose separate sanctions for multiple offenses arising in the course of a single act or transaction.” Iannelli v. United States, 420 U. S. 770, 785, n. 17 (1975). See, e. g., Brown, supra, at 167-168 (noting, in applying Blockburger, that state courts “ ‘have the final authority to interpret... [a] State’s legislation’ ” (quoting Garner v. Louisiana, 368 U. S. 157, 169 (1961))). The Court has even gone so far as to say that the Blockburger test will not prevent multiple punishment where legislative intent to the contrary is clear, at least in *748 the case of state law. “Where ... a legislature specifically authorizes cumulative punishments under two statutes, regardless of whether those two statutes proscribe the ‘same’ conduct under Blockburger, a court’s task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.” Missouri v. Hunter, 459 U. S. 359, 368-369 (1983); see Ohio v. Johnson, 467 U. S. 493, 499, n. 8 (1984).[2]
With respect to punishment for a single act, the Block-burger test thus asks in effect whether the legislature meant it to be punishable as more than one crime. To give the government broad control over the number of punishments that may be meted out for a single act, however, is consistent with the general rule that the government may punish as it chooses, within the bounds contained in the Eighth and Fourteenth Amendments. With respect to punishment, those provisions provide the primary protection against excess. “Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are ‘multiple’ is essentially one of legislative intent.” Johnson, supra, at 499 (citatiohs and footnote omitted).
Ill
The interests at stake in avoiding successive prosecutions are different from those at stake in the prohibition against multiple punishments, and our cases reflect this reality. The protection against successive prosecutions is the central protection provided by the Clause. A 19th-century case of this Court observed that “[t]he prohibition is not against being *749 twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial.” United States v. Ball, 163 U. S. 662, 669 (1896). “Where successive prosecutions are at stake, the guarantee serves ‘a constitutional policy of finality for the defendant’s benefit.’” Brown, supra, at 165 (quoting United States v. Jorn, 400 U. S. 470, 479 (1971) (plurality opinion)).
The Double Jeopardy Clause prevents the government from “mak[ing] repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.” Green v. United States, 355 U. S. 184, 187 (1957). The Clause addresses a further concern as well, that the government not be given the opportunity to rehearse its prosecution, “honing its trial strategies and perfecting its evidence through successive attempts at conviction,” Tibbs v. Florida, 457 U. S. 31, 41 (1982), because this “enhanc[es] the possibility that even though innocent [the defendant] may be found guilty,” Green, supra, at 188.
Consequently, while the government may punish a person separately for each conviction of at least as many different offenses as meet the Blockburger test, we have long held that it must sometimes bring its prosecutions for these offenses together. If a separate prosecution were permitted for every offense arising out of the same conduct, the government could manipulate the definitions of offenses, creating fine distinctions among them and permitting a zealous prosecutor to try7 a person again and again for essentially the same criminal conduct. While punishing different combinations of elements is consistent with the Double Jeopardy Clause in its limitation on the imposition of multiple punishments (a limitation rooted in concerns with legislative intent), permitting such repeated prosecutions would not be consistent with the principles underlying the Clause in its limitation on sue *750 cessive prosecutions. The limitation on successive prosecutions is thus a restriction on the government different in kind from that contained in the limitation on multiple punishments, and the government cannot get around the restriction on repeated prosecution of a single individual merely by precision in the way it defines its statutory offenses. Thus, “[t]he Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first,” Brown, 432 U. S., at 166-167, n. 6.
An example will show why this should be so. Assume three crimes: robbery with a firearm, robbery in a dwelling, and simple robbery. The elements of the three crimes are the same, except that robbery with a firearm has the element that a firearm be used in the commission of the robbery while the other two crimes do not, and robbery in a dwelling has the element that the robbery occur in a dwelling while the other two crimes do not.
If a person committed a robbery in a dwelling with a firearm and was prosecuted for simple robbery, all agree he could not be prosecuted subsequently for either of the greater offenses of robbery with a firearm or robbery in a dwelling. Under the lens of Blockburger, however, if that same person were prosecuted first for robbery with a firearm, he could be prosecuted subsequently for robbery in a dwelling, even though he could not subsequently be prosecuted on the basis of that same robbery for simple robbery.[3] This is true simply because neither of the crimes, robbery *751 with a firearm and robbery in a dwelling, is either identical to or a lesser included offense of the other. But since the purpose of the Double Jeopardy Clause’s protection against successive prosecutions is to prevent repeated trials in which a defendant will be forced to defend against the same charge again and again, and in which the government may perfect its presentation with dress rehearsal after dress rehearsal, it should be irrelevant that the second prosecution would require the defendant to defend himself not only from the charge that he committed the robbery, but also from the charge of some additional fact, in this case, that the scene of the crime was a dwelling.[4] If, instead, protection against successive prosecutions were as limited as it would be by Blockburger alone, the doctrine would be as striking for its anomalies as for the limited protection it would provide. Thus, in the relatively few successive prosecution cases we have had over the years, we have not held that the Block-burger test is the only hurdle the government must clear (with one exception, see infra, at 758-759).
IV
The recognition that a Blockburger rule is insufficient protection against successive prosecution can be seen as long ago as In re Nielsen, 131 U. S. 176 (1889), where we held that conviction for one statutory offense precluded later prosecution for another, even though each required proof of a fact the other did not. There, appellant Nielsen had been convicted after indictment and a guilty plea in what was then the Territory of Utah for “cohabiting] with more than one woman,” based upon his cohabitation with Anna Lavinia *752 Nielsen and Caroline Nielsen during the period from October 15, 1885, to May 13, 1888, in violation of a federal antipolygamy law. See Act of Mar. 22, 1882, ch. 47, §3, 22 Stat. 31. Nielsen served his sentence of three months’ imprisonment and paid a $100 fine. He then came to trial on a second indictment charging him under another federal antipolygamy law with committing adultery with Caroline Nielsen on the day following the period described in the first indictment, May 14, 1888, based on the fact that he was married and had a lawful wife, and was not married to Caroline Nielsen. See Act of Mar. 3, 1887, ch. 397, § 3, 24 Stat. 635. Nielsen pleaded former jeopardy to the second indictment, arguing first that the true period of the cohabitation charged in the first indictment extended well beyond May 13 until the day of the indictments, September 27, 1888, and that “the offence charged in both indictments was one and the same offence and not divisible.” 131 U. S., at 178. The Government argued that the two crimes were not the same because the elements of the two offenses differed.
The Nielsen Court first considered the question whether the offense of unlawful cohabitation included, in a temporal sense, the single act of adultery subsequently prosecuted. On this question, the Court first noted, following In re Snow, 120 U. S. 274 (1887), that although the indictment for cohabitation listed May 13, 1888, as the end of that offense, cohabitation is a “ ‘continuing offence . . . [that] can be committed but once, for the purposes of indictment or prosecution, prior to the time the prosecution is instituted.’” 131 U. S., at 186 (quoting Snow, supra, at 282). Thus, the Nielsen Court interpreted the indictment for cohabitation as covering a single continuing offense that ended on the day the indictment was handed up. See 131 U. S., at 187.
Having concluded that the offense of cohabitation was a “continuous” one, “extending over the whole period, including the time when the adultery was alleged to have been committed,” id., at 187, the Court then considered the ques *753 tion whether double jeopardy applies where a defendant is first convicted of a continuing offense and then indicted for some single act that the continuing offense includes. The Court answered this question by quoting with approval an observation found in Morey v. Commonwealth, 108 Mass. 433 (1871), that “[a] conviction of being a common seller of intoxicating liquors has been held to bar a prosecution for a single sale of such liquors within the same time.” Id., at 435. The Court then conceded that quoting this observation from the Morey opinion would not alone suffice to decide the case before it, since the Government was relying on a further statement from Morey, this one expressing the Morey court’s reason for holding that a prior conviction on a charge of “lewdly and lasciviously associating” with an unmarried woman was no bar to a subsequent prosecution for adultery: “[Although proof of the same acts of unlawful intercourse was introduced on both trials[,] ... the evidence required to support the two indictments was not the same.” 131 U. S., at 188. The Morey court’s reasoning behind this holding was that “[a] single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.” 108 Mass., at 434, quoted in Nielsen, supra, at 188. Morey’s rule governing subsequent prosecution, in other words, was what we know today as the Block-burger elements test.
The Nielsen Court held the Blockburger test inapplicable for two reasons. First, it distinguished Morey by noting that “[t]he crime of loose and lascivious association ... did not necessarily imply sexual intercourse,” 131 U. S., at 188, while the continuous offense involved in Nielsen, cohabitation under the polygamy statute, required proof of “[ljiving together as man and wife,” which “[o]f course” implies “sexual intercourse,” even though intercourse need not have been pleaded or proven under a cohabitation indictment, id., at *754 187. (The second offense charged in both Morey and the case before the Court in Nielsen was adultery, which, of course, did require an act of sexual intercourse.) But even on the assumption that the continuous crime in Morey necessarily did imply sexual intercourse, rendering the cases indistinguishable on their facts, the Nielsen Court indicated that it would not follow the holding in Morey. To the Nielsen Court, it was “very clear that where, as in this case, a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence.” 131 U. S., at 188.
By this last statement, the Court rejected, in a successive prosecution case, the double jeopardy test set out in Morey, which we later adopted in Blockburger; instead of agreeing with Morey that “‘[t]he test is not, whether the defendant has already been tried for the same act/” the Court concluded that a defendant “cannot be a second time tried” for a single act included as one of the “various incidents” of a continuous crime for which he has already been convicted.[5] 131 U. S., at 188.
The Court then went on to address the contention that adultery, as opposed to sexual intercourse, is not an act included in the continuing offense of cohabitatioh, because *755 adultery requires proof that one of the parties is married, while cohabitation does not require such proof. Although the Court agreed that adultery contains such an element, the Court found that this element was irrelevant under its successive prosecution rule, because sexual intercourse is the “essential and principal ingredient of adultery.” Id., at 189. In other words, what may not be successively prosecuted is the act constituting the “principal ingredient” of the second offense, if that act has already been the subject of the prior prosecution. It is beside the point that the subsequent offense is defined to include, in addition to that act, some further element uncommon to the first offense (where the first offense also includes an element not shared by the second). Thus, as the Court states its holding, the cohabitation conviction “was a good bar” because “the material part of the adultery charged [i. e., intercourse] was comprised within the unlawful cohabitation of which the petitioner was already convicted.” Id., at 187 (emphasis supplied); see also ibid. (sexual intercourse “was the integral part of the adultery charged in the second indictment”) (emphasis supplied).
One final aspect of the Nielsen opinion deserves attention. After rejecting a Blockburger test for successive prosecutions, the Court then proceeded to discuss the familiar rule that conviction of a greater offense bars subsequent prosecution for a lesser included offense. This discussion misleads the majority into thinking that Nielsen does nothing more than apply that familiar rule, which is, of course, a corollary to the Blockburger test. See ante, at 705. But Nielsen’s discussion did not proceed on the ground that the Court believed adultery to be a lesser included offense of cohabitation (and thus its later prosecution barred for that reason); on the contrary, the Court had just finished explaining that marriage must be proven for adultery, but not for cohabitation, which precluded finding adultery to be a lesser included offense of cohabitation. The discussion of the lesser included offense rule is apposite for the different reason that once the *756 element of marriage was disregarded (as the Court had just done, considering instead only adultery’s “principal ingredient” of intercourse), the act of intercourse stood to cohabitation as a lesser included offense stands to the greater offense. By treating intercourse as though it were a lesser included offense, Nielsen barred subsequent prosecution for that act under an adultery charge. Indeed, on any other reading we would have to conclude that the Nielsen Court did not know what it was doing, for if it had been holding only that a subsequent prosecution for a lesser included offense was barred, the adultery prosecution would not have been. There can be no question that the Court was adopting the very different rule that subsequent prosecution is barred for any charge comprising an act that has been the subject of prior conviction.[6]
V
Our modern cases reflect the concerns that resulted in Nielsen’s holding. We have already quoted the observation that “[t]he Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.” Brown v. Ohio, 432 U. S., at 166-167, n. 6. The Brown Court, indeed, relied on Nielsen for this proposition. “[I]n In re Nielsen, 131 U. S. 176 (1889), the Court held that a conviction of a Mormon on a charge of cohabiting with his two wives over a 2V2-year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period .... [SJtrict application of the Blockburger test would have per *757 mitted imposition of consecutive sentences had the charges been consolidated in a single proceeding. . . . [CJonviction for adultery required proof that the defendant had sexual intercourse with one woman while married to another; conviction for cohabitation required proof that the defendant lived with more than one woman at the same time. Nonetheless, the Court . . . held the separate offenses to be the ‘same.’” Ibid.
In the past 20 years the Court has addressed just this problem of successive prosecution on three occasions. In Harris v. Oklahoma, 433 U. S. 682 (1977) (per curiam), we held that prosecution for a robbery with firearms was barred by the Double Jeopardy Clause when the defendant had already been convicted of felony murder comprising the same robbery with firearms as the underlying felony. Of course the elements of the two offenses were different enough to permit more than one punishment under the Blockburger test: felony murder required the killing of a person by one engaged in the commission of a felony, see 21 Okla. Stat., Tit. 21, § 701 (1971); robbery with firearms required the use of a firearm in the commission of a robbery, see §§ 801, 791. Harris v. State, 555 P. 2d 76, 80 (Okla. Crim. App. 1976), rev’d, 433 U. S. 682 (1977).
In Harris, however, we held that “[w]hen, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one.” We justified that conclusion in the circumstances of the case by quoting Nielsen’s explanation of the Blockburger test’s insufficiency for determining when a successive prosecution was barred. “‘[A] person [who] has been tried and convicted for a crime which has various incidents included in it . . . cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence.’ In re Nielsen, *758 [131 U. S.,] at 188.” 433 U. S., at 682-683 (citations and footnote omitted).[7]
Just as in Nielsen, the analysis in Harris turned on considering the prior conviction in terms of the conduct actually charged. While that process might be viewed as a misapplication of a Blockburger lesser included offense analysis, the crucial point is that the Blockburger elements test would have produced a different result. The case thus follows the holding in Nielsen and conforms to the statement already quoted from Brown, that the Blockburger test is not the exclusive standard for determining whether the rule against successive prosecutions applies in a given case.
Subsequently, in Illinois v. Vitale, 447 U. S. 410 (1980), the Court again indicated that a valid claim of double jeopardy would not necessarily be defeated by the fact that the two-offenses are not the “same” under the Blockburger test. In that case, we were confronted with a prosecution for failure to reduce speed and a subsequent prosecution for involuntary manslaughter. The opinion of the Illinois Supreme Court below had not made it clear whether the elements of failure to slow were always necessarily included within the elements of involuntary manslaughter by automobile, and we remanded for clarification of this point, among other things. We held that “[i]f, as a matter of Illinois law, a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the ‘same’ Under Blockburger and Vitale’s trial on the latter charge would constitute double jeopardy . . . .” 447 U. S., at 419-420. But that was not all. Writing for the Court, Justice White went on to say that, “[i]n any event, it may be that to sustain its manslaughter case the State may find it neces *759 sary to prove a failure to slow or to rely on conduct necessarily involving such failure .... In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under Brown and our later decision in Harris v. Oklahoma, 433 U. S. 682 (1977).” Id., at 420.
Over a decade ago, then, we clearly understood Harris to stand for the proposition that when one has already been tried for a crime comprising certain conduct, a subsequent prosecution seeking to prove the same conduct is barred by the Double Jeopardy Clause.[8] This is in no way inconsistent with Vitale’s description of Harris as “treating] a killing in the course of a robbery as itself a separate statutory offense, and the robbery as a species of lesser-included offense.” 447 U. S., at 420. The very act of “treating” it that way was a departure from straight Blockburger analysis; it was the same departure taken by the Nielsen Court. Vitale read Harris (which itself quoted Nielsen) to hold that even if the Blockburger test were satisfied, a second prosecution would not be permitted for conduct comprising the criminal act charged in the first. Nielsen and Harris used the word “incident,” while Vitale used the word “conduct,” but no matter which word is used to describe the unlawful activity for which one cannot again be forced to stand trial, the import of this successive-prosecution strand of our double jeopardy jurisprudence is clear.
Even if this had not been clear since the time of In re Nielsen, any debate should have been settled by our decision three Terms ago in Grady v. Corbin, 495 U. S. 508 (1990), *760 that “the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.” Id., at 510 (footnote omitted). Grady did nothing more than apply a version of the Nielsen rule.
As against this sequence of consistent reasoning from Nielsen to Grady, the Court’s citation to two cases, Gavieres v. United States, 220 U. S. 338, 343 (1911), and Burton v. United States, 202 U. S. 344, 379-381 (1906), cannot validate its insistence that, prior to Grady, our exclusive standard for barring successive prosecutions under the Double Jeopardy Clause was the Blockburger test. See ante, at 707-708. Burton came before the Court on a demurrer. The Court there was not presented with the factual basis for the charges, and simply held that two offenses, accepting a bribe from a company and accepting the same bribe from an officer of that company, were “not identical, in law.” 202 U. S., at 381; see also id., at 379 (“[T]he question presented is whether, upon the face of the record, as matter of law simply, the offense charged in the third and seventh counts of the present indictment is the same as that charged in the third count of the former indictment”) (emphasis in original); Abbate v. United States, 359 U. S. 187, 198, n. 2 (1959) (opinion of Brennan, J.). Rather than proving that the Block-burger same-elements test was always the Court’s exclusive guide to evaluation of successive prosecutions prior to Grady, Burton stands only for the proposition that a claim of double jeopardy resting exclusively on pleadings cannot be adjudicated on any basis except the elements pleaded.
Gavieres is in fact the only case that may even be read to suggest that the Court ever treated a Blockburger analysis as the exclusive successive prosecution test under the Double Jeopardy Clause, and its precedential force is weak. Gavieres was an interpretation not of the Constitution, but *761 of an Act of Congress applicable to the Philippines, providing that “no person for the same offense shall be twice put in jeopardy of punishment.” Act of July 1, 1902, ch. 1369, § 5, 32 Stat. 692. It is true that in his opinion for the Court in Gavieres, Justice Day wrote that we had held in Kepner v. United States, 195 U. S. 100 (1904), “that the protection against double jeopardy therein provided had, by means of this statute, been carried to the Philippine Islands in the sense and in the meaning which it had obtained under the Constitution and laws of the United States.” 220 U. S., at 341. Nonetheless, this Court has declined to treat decisions under that statute as authoritative constructions of the Fifth Amendment. See Green v. United States, 355 U. S., at 197, and n. 16; see also Abbate, supra, at 198, n. 2 (opinion of Brennan, J.).
VI
Burton and Gavieres thus lend no support for the Court’s decision to overrule Grady and constrict Harris. Whatever may have been the merits of the debate in Grady, the decision deserves more respect than it receives from the Court today. “Although adherence to precedent is not rigidly required in constitutional cases, any departure from the doctrine of stare decisis demands special justification. See, e. g., Swift & Co. v. Wickham, 382 U. S. 111, 116 (1965); Smith v. Allwright, 321 U. S. 649, 665 (1944).” Arizona v. Rumsey, 467 U. S. 203, 212 (1984).
The search for any justification fails to reveal that Grady’s conclusion was either “unsound in principle,” or “unworkable in practice.” Garcia v. San Antonio Metropolitan Transit Authority, 469 U. S. 528, 546 (1985). Grady’s rule is straightforward, and a departure from it is not justified by the fact that two Court of Appeals decisions have described it as difficult to apply, see ante, at 711-712, n. 16, one apparently because it must be distinguished from the “same evidence” test, see Ladner v. Smith, 941 F. 2d 356, 363-364 (CA5 1991). Nor does the fact that one of those courts has *762 broken the single sentence of Grady’s holding into its four constituent clauses before applying it, see Ladner, supra, reveal a type of “‘confusion,’” ante, at 711 (citation omitted), that can somehow obviate our obligation to adhere to precedent. Cf. Patterson v. McLean Credit Union, 491 U. S. 164, 173-174 (1989).
Nor do Burton and Gavieres have the strength to justify the Court’s reading of Harris solely for the narrow proposition that, in a case where a statute refers to other offenses, the elements of those offenses are incorporated by reference in the statute.[9] While reading the case this way might suffice for purposes of avoiding multiple punishment, this reading would work an unprecedented truncation of the protection afforded by the Double Jeopardy Clause against successive prosecutions, by transferring the government’s leeway in determining how many offenses to create to the assessment of how many times a person may be prosecuted for the same conduct. The Double Jeopardy Clause then would provide no more protection against successive prosecutions than it provides against multiple punishments, and instead of expressing some principle underlying the protection against double jeopardy, Harris would be an anomaly, an “exceptio[n]” to Blockburger without principled justification. Grady, 495 U. S., at 528 (Scalia, J., dissenting). By relying on that anomaly and by defining its offenses with care, the government could not merely add punishment to *763 punishment (within Eighth and Fourteenth Amendment limits), but could bring a person to trial again and again for that same conduct, violating the principle of finality, subjecting him repeatedly to all the burdens of trial, rehearsing its prosecution, and increasing the risk of erroneous conviction, all in contravention of the principles behind the protection from successive prosecutions included in the Fifth Amendment. The protection of the Double Jeopardy Clause against successive prosecutions is not so fragile that it can be avoided by finely drafted statutes and carefully planned prosecutions.
VII
I would not invite any such consequences and would here apply our successive prosecution decisions (from Nielsen to Grady) to conclude that the prosecutions below were barred by the Double Jeopardy Clause. Dixon was prosecuted for violating a court order to “[rjefrain from committing any criminal offense.” App. 8. The contempt prosecution proved beyond a reasonable doubt that he had possessed cocaine with intent to distribute it. His prosecution, therefore, for possession with intent to distribute cocaine based on the same incident is barred. It is of course true that the elements of the two offenses can be treated as different. In the contempt conviction, the Government had to prove knowledge of the court order as well as Dixon’s commission of some criminal offense. In the subsequent prosecution, the Government would have to prove possession of cocaine with intent to distribute. In any event, because the Government has already prosecuted Dixon for the possession of cocaine at issue here, Dixon cannot be tried for that incident a second time.[10]
*764 Foster was subject to a Civil Protection Order (CPO) not to “molest, assault, or in any manner threaten or physically abuse” his wife, Ana Foster. App. 18. With respect to the period in which the CPO was in effect, Foster was alleged to have violated it (in incidents relevant here) by (1) “grabbing [Ms. Foster] and throwing] her against a parked car,” on November 6, 1987, by threatening her on (2) November 12, 1987, (3) March 26, 1988, and (4) May 17, 1988, and by (5) throwing her down basement stairs, kicking her and hitting her head against the floor until she lost consciousness, on May 21,1988. These incidents formed the basis for charging Foster with contempt of court for violation of the CPO. Foster was found guilty of violating the court order by assaulting Ana Foster on November 6, 1987, and May 21,1988. He was found not guilty of the threats on November 12, 1987, March 26, 1988, and May 17, 1988.
The Government then sought to prosecute Foster for these same threats and assaults, charging him in a five-count indictment with violations of the D. C. Code. Count 1 charged him with simple assault on November 6,1987. Since he has already been convicted of this assault, the second prosecution is barred. The Court agrees with this under its reading of Harris, but would distinguish the other counts: Counts II, III, and IV (based on the same threats alleged in the contempt proceeding) charging Foster with “ threatening] to injure the person of Ana Foster ... , in violation of 22 D. C. Code, Section 2307” (which prohibits threats to kidnap, to do bodily injury, or to damage property); and Count V, charging Foster with “assaul[t] . . . with intent to kill” as a result of his actions on May 21, 1988. App. 43-44. The Court concludes that the later prosecutions are not barred, because in its view the offenses charged in the indictment each contained an element not contained in the contempt charge (with respect to the threats, that they be threats to kidnap, to inflict bodily injury, or to damage property; with respect to the assault, that it be undertaken with an intent to kill); and *765 because the contempt charge contained an element not specified by the criminal code sections that formed the basis for the indictment (violation of the CPO). See ante, at 700-703.[11]
In each instance, however, the second prosecution is barred under Nielsen, Harris as we construed it in Vitale, and Grady. The conduct at issue constituted the conduct in the contempts first charged as well as in the crimes subsequently prosecuted, and the Government’s prosecution of Foster twice for the conduct common to both would violate the Double Jeopardy Clause.
VIII
Grady simply applied a rule with roots in our cases going back well over 100 years. Nielsen held that the Double Jeopardy Clause bars successive prosecutions for more than one statutory offense where the charges comprise the same act, and Harris, as understood in Vitale, is properly read as standing for the same rule. Overruling Grady alone cannot remove this principle from our constitutional jurisprudence. Only by uprooting the entire sequence of cases, Grady, Vi-tale, Harris, and Nielsen, could this constitutional principle be undone. Because I would not do that, I would affirm the judgment of the Court of Appeals. I concur in the judgment of the Court in Dixon and with respect to Count I in Foster, but respectfully dissent from the disposition of the case with respect to Counts II-V in Foster.

 Consequently, I concur in the Court’s judgment with respect to Dixon’s prosecution and the prosecution of Foster under Count I of the indictment against him.

 For purposes of this case I need express no view on this question, whether the proscription of punishment for state-law offenses that fail the Blockburger test can somehow be overcome by a clearly shown legislative intent that they be punished separately. See Albernaz v. United States, 450 U. S. 333, 344-346 (1981) (Stewart, J., concurring in judgment).

 Our cases have long made clear that the order in which one is prosecuted for two crimes alleged to be the same matters not in demonstrating a violation of double jeopardy. See Brown v. Ohio, 432 U. S. 161, 168 (1977) (“[T]he sequence is immaterial”).

 The irrelevance of additional elements cfan be seen in the fact that, as every Member of the Court agrees, the Double Jeopardy Clause does provide protection not merely against prosecution a second time for literally the same offense, but also against prosecution for greater offenses in which the first crime was lesser included, offenses that by definition require proof of one or more additional elements.

 Citing dictionary definitions, the majority claims that “incident,” as used in this passage, “obviously” means “element.” Ante, at 705, n. 10. This explanation does not make sense, for a defendant is not “tried for” an “element”; a defendant may be “tried for” a crime, such as adultery, that contains certain elements, or may be “tried for” certain acts. The immediate context of this passage from Nielsen indicates that these latter definitions of “incident” are intended. See, e. g., 131 U. S., at 188 (“ ‘tried for the same act’ ”). The point is nailed down by the Court’s discussion of intercourse as an “incident” of cohabitation, id., at 189, after having indicated that intercourse need not be pleaded or proven under a cohabitation indictment, id., at 187; if “incident” did mean “element,” pleading and proof of intercourse would, of course, have been required. “Incident” here clearly means “act.”

 Our eases, of course, hold that the same protection inheres after an acquittal. See North Carolina v. Pearce, 395 U. S. 711, 717 (1969).

 In Brown we recognized that “[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have hot occurred or have not been discovered despite the exercise of due diligence.” 432 U. S., at 169, n. 7.

 It is true that in light of its decision to remand the case to provide the State further opportunity to put forward some other basis for its prosecution, the Vitale Court, appropriately, described the claim only as “substantial.” The important point, however, is the way in which the Court in Vitale (and, for that matter, the dissent in that case, see 447 U. S., at 426 (opinion of Stevens, J.)) read the Harris opinion.

 Indeed, at least where the common elements of the offenses themselves describe a separate criminal offense, the Court’s reading of Harris v. Oklahoma, 433 U. S. 682 (1977), is apparently inconsistent even with the historical understanding of the Clause put forward by three of the dissenters in Grady. See Grady v. Corbin, 495 U. S. 508, 531 (1990) (Scalia, J., dissenting) (quoting 1 T. Starkie, Criminal Pleading, ch. xix, pp. 322-323 (2d ed. 1822)) (“ ‘[I]f one charge consist of the circumstances A. B. C. and another of the circumstances A. D. E. then, if the circumstance which belongs to them in common does not of itself constitute a distinct substantive of-fence, an acquittal from the one charge cannot include an acquittal of the other’ ”) (emphasis supplied).

 I agree, therefore, with Justice White that the element of knowledge of a court order is irrelevant for double jeopardy purposes. See ante, at 734 (opinion concurring in judgment in part and dissenting in part).

 I note that at least the charge concerning assault with intent to kill would apparently have been barred under the approach taken in Justice Scalia’s dissenting opinion in Grady. See n. 9, supra.